14537

DUKES v. LIFE INSURANCE COMPANY OF VIRGINIA

(193 S. E., 36)

April, 1936.

*Mr. J. C. Long,* for appellant, cites:

*Messrs. Hagood, Rivers & Young,* for respondents, cite:

October 6, 1937.

The opinion of the Court was delivered by Mr. Justice Bonham.

The plaintiff alleges in her complaint that she was induced by the agent of the defendant insurance company to take out a policy on the life of her sister, of which plaintiff was to be the beneficiary, and which would be an endowment policy; that after the payment by her of the premiums

for ten years the company would pay her $250.00, the face value of the policy; that at the expiration of the ten years she learned for the first time that the policy delivered to her is not an endowment policy, does not provide that she shall be the beneficiary thereof, nor that she shall be paid $250.00 at the expiration of the ten years. She alleges that she was induced to take out the policy by the deceit and fraudulent representations of the agent of the company, and demands actual and punitive damages in the sum of $1,500.00.

The answer of defendant denies all of the material allegations of the complaint, and for further answer alleges that the policy delivered to the plaintiff speaks for itself and shows that it is not an endowment policy, and plaintiff is bound by the terms of the policy which she accepted.

The case was tried first in the Civil and Criminal Court of the City of Charleston, and resulted in a verdict for plaintiff in the sum of $500.00.

From this judgment, the defendant appealed to the Court of Common Pleas for Charleston County, which appeal was heard by Hon. H. F. Rice, Circuit Judge, who reversed the judgment of the lower Court and ordered that judgment be entered for the defendant.

From this order, the plaintiff appeals upon five exceptions, with four subdivisions under exception one.

The order of Judge Rice is very brief, and simply holds that the Judge of the Civil and Criminal Court erred in not granting the defendant's motion for a directed verdict.

It does not appear in the record upon what grounds the Judge of the civil and criminal Court based his order refusing the motion for directed verdict. However, the grounds upon which defendant's motion was made are set out in the record, and the plaintiff—appellant here—seems to have predicated her exceptions upon the assumption that Judge Rice adopted, as the basis of his order, the grounds of defendant's motion.

The appellant's counsel states four questions for argument. In our judgment a question arises at the outset which is the cardinal issue and will determine the whole matter.

It appears from the record that the application for the policy was made and signed by Miss Kate Jennings—the sister of Mrs. Jessie Frances Dukes. The policy was delivered to Mrs. Dukes the latter part of December, 1924, and the premiums were paid by her. Attached to the policy was a printed slip upon which Miss Kate Jennings could designate the person she wished to be the beneficiary of the policy; this slip was never filled out, nor was Miss Jennings, who is still living, ever asked to fill it out and sign it. It does not appear that Mrs. Dukes had any insurable interest in the life of Miss Jennings, and this is probably the reason that the company did not insert the name of Mrs. Dukes as beneficiary. The appellant frankly admits that she did not read the policy when it was delivered to her, but put it in a drawer and never looked at it till in December, 1934. If she had done so, she would have seen the character of the policy—a ten year pay life policy, paid up at the end of ten years—and she would have seen the printed slip attached to it. She testifies that her sister, Miss Jennings, would have signed the slip making her the beneficiary, if asked to do so. Indeed, she is satisfied that her sister would do so now. It appears that her purpose for taking out the policy was to provide for her sister. She seeks to excuse her negligence in not reading the policy by saying that she relied on the representations of the agent. She can read; her testimony shows that she is a woman of intelligence and understanding.

At the request of counsel for respondent, on cross examination she read from the policy: "Special Privilege—The insured is requested to examine carefully the terms and conditions of this policy, and if its terms are not satisfactory, or if its conditions are not accepted and agreed to, the policy may be surrendered for cancellation within two weeks after

its date, at the office of the company in the district where this policy is delivered, and the premiums paid hereon will be returned to the insured."

Counsel for appellant seeks to differentiate this case from the numerous decisions of the Court touching the duty of one to read or have read the written paper of contract which he signs or accepts, by saying that this action is not based upon a written contract, but is an action for fraud and deceit.

The facts which appellant herself presents show that, if she had used ordinary precaution, she was bound to discover that the policy delivered to her was not the policy which she now claims was promised to her. The cases upon which counsel relies are not applicable here. The circumstances differentiate them from this case.

The case of *Frierson v. Casualty Co.,* 168 S. C., 178, 167 S. E., 232, 234, furnishes a parallel to the present case.

The plaintiff alleged in that case that she purchased a certain kind of policy on the life of her sister, payable to herself as beneficiary; that she was delivered a different kind of policy; that it was done by making misrepresentations with fraudulent intent. There was an order of nonsuit. On appeal Mr. Justice Carter said, for this Court: "The appellant is possessed of intelligence, can read and write * * * kept the [policy] in her possession for a period of about six months * * * continued * * * to pay the monthly premium thereon * * * and having kept the policy and continued to pay the monthly premiums thereon, under the circumstances * * * in our opinion, the plaintiff should not be heard to complain that the insurance company practiced the alleged fraud upon her in not delivering to her the kind of policy she claims to have agreed to purchase."

The cases of *Colt Company v. Britt,* 129 S. C., 226, 123 S. E., 845, and *Whitman v. Railway Co.,* 107 S. C., 200,

92 S. E., 861, L. R. A., 1917-F, 717, are cited in support of the conclusion of the Court.

The facts in the case of *Hood v. Life & Casualty Co.,* 173 S. C., 139, 175 S. E., 76, 77, are illuminating in their bearing upon the issues under consideration here. Carrie Hood alleges in her complaint that her brother, Ben O. Hood, had a policy in the defendant company, in which she was named as beneficiary; that she got the notice that the annual premium was due and went to see the agent; that the agent told her that her brother had with that company a health and accident policy; that the policy covered any and all kinds of accidents; that it was a good thing, and that because her brother was working in a dangerous place, she ought to pay the premium; that, relying upon the truth of these representations, she paid the premium. Her brother was accidentally drowned. The company denied liability on the ground that the policy did not cover death from drowning. Action was brought; the plaintiff claiming that the defendant by false representations as to the true terms of the policy had induced her to pay the premiums on the policy. On the trial on circuit the plaintiff had a verdict. On the hearing on appeal the opinion was delivered by Mr. Justice Stabler, now the Chief Justice. In an able and elaborate presentation of the law bearing on the issues, the learned justice reviewed the decisions of the Courts of this and other jurisdictions. He quoted from the case of *Baldwin v. Cable Co.,* 78 S. C., 419, 59 S. E., 67, the opinion being written by Mr. Justice Woods, the following: " 'The rule is a person who is unable to read is bound to have the paper read to him before signing, just as a person who can read is bound to read it before signing; and failure by such illiterate person to take this precaution will ordinarily be regarded such gross negligence as will estop him from avoiding the contract' "—citing *Montgomery v. Scott,* 9 S. C., 20, 30 Am. Rep., 1.

This further rule is announced by the *Baldwin case* and quoted in the *Hood case*. It is likewise found in 13 C. J., 372, § 250: "Broadly, it may be said that one line of decisions is based upon the theory that negligence is not, and should not in sound morals constitute, a defense to the willful wrong which fraud implies and involves; the other view, upon the theory that neither the Courts of equity nor of law are bound to afford relief to a victim of fraud who has failed or refused to exercise reasonable diligence or discretion in the protection of his own interests."

Proceeding with the opinion in the *Hood case,* Mr. Justice Stabler said: "Did the conduct of the plaintiff, in the circumstances recounted, amount to a conscious or reckless disregard of her duty to avail herself of the opportunity and means at hand to protect her own interests? While she was a woman of limited education, it appears that the plaintiff was a person of some intelligence and knew what she wanted. It is true that she did not have the policy in her possession at any time before the death of the insured, but she could have easily obtained if from her brother, who lived with her in the same house, and who had the policy in his possession. She had the fullest opportunity for more than a year to do so, but according to her own statement, she never even spoke to him about the insurance, thereby indicating the greatest indifference to her duty in the matter. In these circumstances, we are constrained to hold that her conduct, in failing to employ the opportunity and means given her to acquaint herself with the contents of the policy, was clearly a conscious and reckless disregard of her duty in the premises and was a proximate cause of her alleged injury or damage."

Like the case at bar, the *Hood case* was not one on the contract of insurance, but is one in tort founded on fraud and deceit, Nevertheless, it was held that the plaintiff could not recover because her own failure to employ the oppor-

tunity and means given her to acquaint herself with the contents of the policy was clearly a conscious and reckless disregard of her duty in the premises, and was a proximate cause of her injury or damage.

These words are especially applicable to the case at bar, where the evidence discloses a state of facts pregnant with proof of plaintiff's conscious and reckless disregard of her duty to avail herself of the opportunity and means to acquaint herself with the contents of the policy. She had the policy in her possession for ten years. She had every opportunity to read it; she had every opportunity to have Miss Jennings to sign the slip which would make plaintiff bene-· ficiary of the policy, but she did none of these things. How can she be heard now to complain?

In the case of *Hyder v. Metropolitan Life Ins. Co.,* 183 S. C., 98, 190 S. E., 239, 243, this established rule of law is reiterated: "When the parties have reduced their contract to writing, the Court can look only to the terms in which the parties have expressed their intention in such writing"—citing *Blackwell v. Faucett,* 117 S. C., 60, 108 S. E., 295.

True, this is not an action to enforce a contract of insurance, but is one in tort. Nevertheless, the quotation serves as an additional warning to those who would avoid a written contract on the ground that it does not express the terms of an oral agreement and the variation has but just been discovered that, if the failure to discover the difference is due to the negligence of the plaintiff in acquainting himself with the contents of a written instrument, he will not be heard by the Courts of law or of equity.

The record makes it plain that Mrs. Dukes is a woman of intelligence and education; that she had the policy in her possession for ten years, yet she never examined it to ascertain if it was the policy she now asserts the agent promised to give her. What damage has she suffered? She has a policy fully paid for. She admits

that her sister, in whose name the policy is written, will now, if requested to do so, sign the slip which would name Mrs. Dukes the beneficiary. She retains this valuable policy, and yet sues for damages because she did not get a different one. The claim is not reasonable; but, if it be true that the agent did deceive her as to the nature of the policy promised and that delivered, which is denied by the evidence for the defendant, plaintiff has barred herself of the right to recover by her own gross negligence.

Having reached this conclusion, it is unnecessary to consider the other proposed issues.

Judgment affirmed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BAKER and FISHBURNE concur.

Mr. JUSTICE CARTER did not participate on account of illness.