12978

SOUTHERN RAILWAY CO. v. ROUTH

(159 S. E., 640)

*Messrs. H. E. DePass* and *Frank G. Tompkins,* for appellant,

*Messrs. Perrin & Tinsley,* for defendant,

September 24, 1931.

The opinion of the Court was delivered by Mr. Justice Carter.

For a statement of this case, we adopt the agreed statement of counsel contained in the transcript of record, as follows:

"This is an action brought by the plaintiff herein on January 12, 1928, for the purpose of enjoining and restraining the defendant from occupying and using any part of a strip of land one hundred (100) feet wide immediately adjacent to the property of the defendant and to the tracks of the plaintiff, situate and being at mile post W. 70½, East Spartanburg, County of Spartanburg, State of South Carolina, and for the further purpose of requiring the defendant to move a building and fence from the right-of-way of plaintiff, erected within one hundred (100) feet of the center line of its main track leading from Spartanburg to Columbia.

"The defendant answered denying the railroad's right-of-way to one hundred (100) feet on the west side of its track at the point hereinabove set forth and claimed absolute title himself. He also set up several defenses in his answer, the principal ones being that plaintiff had not complied with the terms of its charter and that it had abandoned the original line of railroad as the connecting link between Spartanburg and Columbia, and had voluntarily elected to erect and operate another main line of railroad for the purpose of giving ingress and egress into and through the City of Spartanburg.

"At the close of the testimony, motions for directed verdicts were made both by the plaintiff and the defendant. The presiding Judge overruled the motion for a directed verdict by the plaintiff. He, however, granted the motion for a directed verdict by the defendant—holding that the railroad, since it had voluntarily elected to vary the operations of its trains between the termini by cutting the East Main Street crossing and erecting a new belt line from East Spartanburg through the city to the Air Line Railway for the operation of its through freight and passenger trains thereover, abandoned that portion between the cut-off and

the northern terminus and relinquished its charter rights thereto for ordinary railroad purposes. However, due to the fact that the defendant admitted that when he bought the property, he bought it by and from a plat of the Lockman estate showing a right-of-way in the said plaintiff of fifty (50) feet, the presiding Judge modified the above ruling to the extent of allowing the railroad a right-of-way fifty (50) feet from the center of its main line on the west adjacent to the property of the defendant, and required that the defendant move his warehouse and fence back to this fifty (50) foot line."

Following the ruling of his Honor, Judge M. M. Mann, before whom the case was tried, as to the direction of a verdict, his Honor issued the following order:

"ORDER

"This is an action brought by the plaintiff herein for the purpose of enjoining and restraining the defendant from occupying and using any part of a strip of land one hundred (100) feet wide immediately adjacent to the property of this defendant and to the tracks of the plaintiff herein, situate and being at Mile Post 70½ at East Spartanburg, County of Spartanburg, State of South Carolina, and for the further purpose of requiring the defendant to move a building and fence from the right-of-way of the plaintiff, if it should be determined that the plaintiff was entitled to a hundred-foot right-of-way as claimed.

"The defendant answered denying the railroad's right to a hundred-foot right-of-way on the west side of its tracks at the point hereinabove set forth, and claimed absolute title in himself. He also set up several defenses in his answer, the principal ones being that plaintiff had not complied with the terms of its charter and that it had abandoned the original main line of railway as the connecting link between Spartanburg and Columbia, and had voluntarily elected to erect and operate another main line of railway for the

purpose of giving ingress and egress into and from the City of Spartanburg. The contention of the defendant being that said action on the part of the railway breached the terms and provisions of the charter granted to the Spartanburg and Union Railway Company in 1847, and that the plaintiff was estopped to claim any more of said right-of-way therein provided for than was actually occupied by the tracks of the plaintiff and in use by them at the time of the abandonment.

"At the close of the testimony a motion for a directed verdict was made by both the plaintiff and the defendant, and after careful consideration of the testimony and argument of counsel, I was convinced that there was but one reasonable conclusion to be deducted therefrom, and that was that the contention of the defendant was sound and that he was entitled to the relief prayed for in his answer. I, therefore, directed a verdict for the defendant, holding that the railroad, since it had voluntarily elected to change the main line of its railway from the location originally used to a new one, constituted an abandonment of its rights and privileges under its original charter, and under the terms of the same said railroad was no longer entitled to any more of the right-of-way therein granted than was actually occupied by its tracks at the present time. However, due to the fact that the defendant admitted that when he bought the property, he bought it from a plat showing a right-of-way in the said plaintiff of fifty (50) feet, I modified the above ruling to the extent of allowing the railroad sufficient additional property to extend the same beyond the land actually occupied by the tracks to a distance of fifty feet from the center of the original main line.

"Now, therefore, on motion of Perrin & Tinsley, attorneys for the defendant herein, it is ordered that the plaintiff and its successors in title, together with all its agents, servants or representatives, be and are hereby permanently enjoined from using any portion of the property of the

defendant herein adjacent to the said railroad as a right-of-way beyond a line parallel with the original main line of the Spartanburg and Union Railway, running between Spartanburg and Union, as constructed under its charter of 1847, at a distance of fifty feet from said original main line, as shown on a plat of the A. C. Lockman estate property, near East Spartanburg, made by W. N. Willis, Engineer, March 20, 1913, and recorded in the office of R. M. C. for Spartanburg County, in Plat Book No. 3, page 192.

"The plaintiff herein is further ordered to remove from the property of the defendant, as herein fixed, within sixty (60) days from the date of this order, any property which they now have located thereon, and is hereby permanently enjoined from in any way using for any of its purposes any of the property of this defendant lying on the westerly side of the tracks of said company at a distance of more than fifty feet therefrom.

"It is further ordered and decreed that the defendant be, and he hereby is, permanently enjoined from using any of the property in the alleged right-of-way of the Southern Railway Company east of the line hereinabove fixed by the Lockman plat, and he is hereby directed and ordered to remove from said right-of-way of the plaintiff, within sixty (60) days from the date of this order, the fence constructed thereon and so much of the building described in the complaint as extends beyond the line herein fixed as the boundary line between the plaintiff and the defendant. Provided, however, that it will be a sufficient compliance with this order for the defendant to remove so much of said building as is on the right-of-way of the Southern Railway as determined herein, at such time as he may be required to do so by the plaintiff, even should this time extend beyond the sixty-day period herein fixed.

"It is further ordered and decreed that an appeal from this order to the Supreme Court of this State shall automatically stay the enforcement of the provisions of this

order until the final adjudication thereof by the Supreme Court, or the appeal has been dismissed."

From the rulings and order of the trial Judge and judgment thereon, the plaintiff has appealed to this Court. The defendant also excepted to certain parts of said order, but upon the hearing before this Court abandoned his exceptions and asked that the judgment in the lower Court be sustained as a whole.

In the said order, his Honor, Judge Mann, gives a clear statement of the issues involved and a full discussion of the same. For that reason we consider it unnecessary for us to enter into a discussion of the several exceptions, but deem it sufficient to state that after a careful examination of the entire record we think Judge Mann made a proper ruling on the motions before him and issued a proper order in the case. As to the position of appellant, that under the testimony issues of fact were raised which came within the province of the jury, even granting this, in our opinion appellant is not in position to maintain that contention. The record discloses that after counsel for the defendant had made a motion for direction of a verdict, counsel for the plaintiff (appellant before this Court) made this statement before the trial Judge: "I agree with counsel it is within the province of the Court to direct a verdict one way or the other in this case, and under the evidence the Court should do so, and I move therefore for a directed verdict on the grounds," and thereupon stated plaintiff's grounds for a directed verdict. Thereupon, the trial Judge considered and passed upon the issues of fact as well as law, and rendered a decision adverse to appellant's contention. In our opinion, the trial Judge was justified in concluding that counsel conceded that there was no question to be submitted to the jury, and the question cannot now be raised in this Court. Furthermore, from our examination of the testimony in the case, we are of the opinion that the case was properly not submitted to the jury; that there was but one reason-

able inference to be drawn from the testimony; and that his Honor correctly decided the case in favor of the defendant.

The exceptions are overruled, and the judgment of the Circuit Court affirmed.

MR. JUSTICE STABLER concurs.

MR. JUSTICE BLEASE and MR. ACTING ASSOCIATE JUSTICE GRAYDON concur in result.

MR. JUSTICE COTHRAN dissents.

MR. JUSTICE BLEASE (concurring in result): After defendant's counsel moved for a directed verdict, plaintiff's attorney said: "I agree with counsel, it is within the province of the Court to direct a verdict one way or the other in this case, and under the evidence the Court should do so, and I move therefore for a directed verdict on the grounds: * * * *"

I take the remarks and actions of the counsel for both parties in the nature of a stipulation that jury trial was waived, and that the presiding Judge should pass upon the facts as well as the law. Some of the facts were disputed, but the defendant adduced sufficient evidence to sustain the findings of the trial Judge. Accordingly, I concur in the result of the opinion of Mr. Justice Carter.

MR. ACTING ASSOCIATE JUSTICE GRAYDON concurs.

MR. JUSTICE COTHRAN (dissenting): At the point in question, the railroad company claims a right-of-way, under the charter of its predecessor, of 100 feet upon each side of the center of its main line. Within that space, on the southwest side of the railroad, the defendant has erected a fence and a small building; the fence is parallel with and 42 feet from the main line track, and extends 206 feet from the building in a southeast direction; the main front of the building, 24 feet, is also parallel with and 42 feet from the main line, and has an extension of a room or piazza 3.5 × 17.5 feet.

The action by the railroad company is to enjoin the defendant from the occupation of its right-of-way by said

structures, and to require their removal. The defendant denied the title of the railroad company to the claimed right-of-way, and contended that it had abandoned all right under its charter thereto, for the reason that will be explained, and demanded an injunction against the interference by the railroad company with his property rights.

The case came on to be tried before his Honor, Judge Mann, and a jury (why, it does not appear), and at the close of the testimony each party moved for a directed verdict; the motion of the railroad company was refused, and that of the defendant was granted, his Honor holding that the railroad, since it had voluntarily elected to vary the operations of its trains between the termini by cutting the East Main Street crossing and erecting a new belt line from East Spartanburg through the city to the Air Line Railway for the operation of its through freight and passenger trains thereover, abandoned that portion between the cut-off and the northern terminus and relinquished its charter rights thereto for ordinary railroad purposes. However, due to the fact that the defendant admitted that when he bought the property, he bought it by and from a plat of the Lockman estate, showing a right-of-way in the said plaintiff of fifty (50) feet, the presiding Judge modified the above ruling to the extent of allowing the railroad a right-of-way of fifty (50) feet from the center of its main line on the west, adjacent to the property of the defendant, and required the defendant to move his warehouse and fence back to this fifty (50) foot line. From this ruling and order, both parties appealed, but at the hearing before this Court the defendant announced that his appeal was abandoned.

Upon the trial, the railroad company offered the following documentary evidence in support of its title:

(1) An Act to authorize the formation of the Spartanburg & Union Railroad Company, passed December 17, 1847, Volume 11 of the Statutes of South Carolina, page 479.

(2) An Act creating a lien in favor of the state, 12th Statutes, page 65

(3) The record in the Court of Common Pleas for Fairfield County, entitled "State of South Carolina, *ex relatione* Attorney General, against Spartanburg and Union Railroad Company." This record contained the bill to enforce statutory lien of the State upon the property of the Spartanburg & Union Railroad Company; the decree for the sale of the property under the direction of James M. Baxter and Thomas B. Jeter, special referees; deed from the referees to Henry G. Worthington.

(4) The record from the Court of Common Pleas for Union County of the proceedings to foreclose the mortgage of Henry C. Worthington to James M. Baxter and Thomas B. Jeter, special referees, given to secure the purchase price of the Spartanburg & Union Railroad Company. This record contained the complaint, decree, order for sale by the sheriff of the property of the Spartanburg & Union Railroad Company.

(5) Deed from Robert McBeth, sheriff of Union County, to Albert Austell, Wm. H. Inman, and Rufus Y. McAdams, as purchasers of all of the property of the Spartanburg & Union Railroad Company. Deed Book E-23, page 109.

(6) Certificate from the secretary of state of the organization and formation of a new corporation under the name and style of Spartanburg, Union & Columbia Railroad Company, under the Act of the General Assembly of South Carolina, approved March 24, 1876.

(7) Deed from Alfred Austell, Wm. H. Inman, and Rufus Y. McAdams to Spartanburg, Union & Columbia Railroad Company. Recorded in Book H-26, page 316, clerk's office, Union County. Recorded Deed Book RR, page 665, Spartanburg County.

(8) Deed from Spartanburg, Union & Columbia Railroad Company, dated November 11, 1895, to Asheville &

Spartanburg Railroad Company. This deed conveyed all of the property of the Spartanburg, Union & Columbia Railroad Company to the Asheville & Spartanburg Railroad Company. Recorded in Book LLL, page 771, R. M. C. office for Spartanburg County.

(9) Act of the General Assembly of South Carolina, approved February 19, 1902, authorizing the consolidation and merger of the Asheville & Spartanburg Railroad Company, South Carolina & Georgia Railroad Extension Company and Carolina Midland Railway Company, and to authorize and empower the consolidated company to lease its railroad and properties and franchises to the Southern Railway Company.

(10) Agreement of consolidation of the above railroads under the name and style of Southern Railway, Carolina Division, dated May 5, 1902.

(11) Lease of Southern Railway, Carolina Division, to Southern Railway Company of all of the property of the consolidated company, dated June 30, 1902. Recorded Deed Book ZZZ, page 151.

(12) Certified copy of the charter of the Southern Railway Company on file in the office of secretary of state, charter admitted to be filed by D. H. Tompkins, secretary of state, December 28, 1896. Recorded Book NNN, page 422.

No question appears to have been raised as to the charter right of the railroad company to a right-of-way of 100 feet on each side of the center of the main line. The property of the defendant lies on the opposite side of the track from the old depot, the northern terminus of the Spartanburg & Union Railroad, running from Columbia to Spartanburg. The main question involved is whether, by reason of the circumstances hereinafter detailed, the present railroad company, the plaintiff Southern Railway Company, has abandoned its charter right-of-way at the point in question.

It appears without question that the issue turns upon the inferences to be drawn from the following uncontroverted facts :

Between the years 1857 and 1860, the Spartanburg & Union Railroad Company, chartered in 1847, 11 Stat., 470, built and completed its railroad from Union to Spartanburg; its northern terminus was a depot erected on Union Street, in the southeastern part of the City of Spartanburg, about a fourth of a mile southeast of East Main Street in that city; in 1876 a new corporation, the Spartanburg, Union & Columbia Railroad Company was chartered and organized, and the line completed from Columbia to Spartanburg; in the meantime, the original location of the northern terminus at Union Street was maintained; about this time, 1875 or 1876, it was deemed advisable to construct a track from the Union Street depot, through the City of Spartanburg, crossing East Main Street in that city, and connecting with the Air Line Railroad, between Washington and Atlanta, a short distance north of the Spartanburg depot of that railroad.

The grade crossing of East Main Street, in the business center of Spartanburg, by the extension of the railroad from the Union Street depot to the Air Line Railroad, was a source of great complaint by the authorities of the city, by reason of the constant interruption of traffic and the danger to persons using the street. Accordingly, after many futile efforts, an agreement was entered into between the Southern Railway Company and the city, by which the railway company, induced by a substantial contribution by the city to the expense thereof, undertook to construct what is termed a belt line, leaving the old main line of the Spartanburg, Union & Columbia railroad, at or near the old Union Street depot, circling the city and connecting with the Air Line Railroad, some distance north of the old connection near the Spartanburg depot. The track of the extension from the Union depot, crossing East Main Street, and connecting with the

Air Line Railroad, was torn up from one side of East
Main Street to the other, and the street at that point left
entirely open, removing the disturbing elements of inter-
ruption of traffic and danger. No interference was made
with the old extension track from East Main Street to the
old Union depot on the one side, or from East Main Street
to the connection with the Air Line Railroad on the other;
this bisected link is used on both sides of East Main Street,
serving many industrial enterprises established along the
line and naturally calculating upon its maintenance. There
is nothing of course to prevent trains from running up to
East Main Street upon either side. The evidence tends to
show that a considerable industrial development, requiring
additional spur and side tracks, has arisen along the sections
of the link on each side of East Main Street, which owes
its life to the maintenance of these sections, upon the faith
of which it has been or will be installed. If it is to be held
that the plaintiff railroad company has abandoned its rights-
of-way attached to this link, by reason of the installation of
the belt line, the land upon which the sections are built must
be held to have reverted to the original owners of the fee, to
whose mercy the industrial enterprise and the railroad com-
pany will necessarily be subjected.

Before the belt line was installed, the link, unbroken at
East Main Street, was used for the passage of trains,
freight, and passenger, and for the accommodation of the
industrial enterprises along its line. Since its installation,
the freight and passenger service has been diverted to the
belt line, and the industrial enterprises have been served as
before by the link (as for convenience I have designated the
connecting track between the old Union Street depot and
the Air Line Railroad). There is no reason why those east
of the Main Street disruption may not be served from
the point of the divergence of the belt line at the old site
of the Union Street depot, up to East Main Street, and
those on the west, from the point of the connection of the

link with the Air Line Railroad. It seems to me that it would be an unnecessarily harsh construction, so far as the defendant is concerned, whose interests are not affected by the installation of the belt line, and a severe blow not only to the railroad company which is entitled to the freight revenues from these industrial enterprises which it may be assumed have contract relations with the railroad company, but to the industrial enterprises themselves, whose money has been invested in establishments which would be practically destroyed by a destruction of their shipping facilities.

It appears to me contrary to the right and justice of the case, and to the undisputed facts, to hold that the railroad company has abandoned the entire link and therefore lost its right-of-way from the Union Street depot side to the Air Line Railway, except of course, the small part of the track which has been disrupted at the East Main Street crossing; a disruption contemplated and consummated under the agreement with the city for the laudable purpose indicated above.

The law holds that two things must co-exist in order for there to be an abandonment, viz.: There must be (1) by an intention to abandon, and (2) an external act of quitting by which such intention is carried into effect. There must be an actual relinquishment of the property.

If the railroad has by charter a right-of-way limited to use for railroad purposes, and it moves its track off of the right-of-way and puts nothing thereon or keeps nothing thereon, that is a non-user, and such non-user is not alone sufficient to be held an abandonment. On the other hand, if the railroad track is taken from the right-of-way and the property is put to a use entirely inconsistent with the use for railroad purposes, that is certainly evidence of abandonment, and it is inconsistent with a claim under a title confining the use to railroad purposes. *Lorick & Lowrance v. Sou. Ry. Co.,* 87 S. C., 71, 68 S. E., 931; *Polson v. Ingram,* 22 S. C., 541; *Sou. Ry. Co. v. Beaudrot,* 63 S. C., 266, 41

S. E., 299; *Golconda Northern Ry. Co. v. Gulf L. C. R. Co.,*
265 Ill., 194, 106 N. E., 818, Ann. Cas., 1916-A, 833.

The non-use or misuse of the character indicated above
is evidence of abandonment, but the Courts of South Caro-
lina and other Courts hold that abandonment is largely a
question of intention, to be found from all the facts. It is
therefore generally held that abandonment is a question for
the jury. But in this case there is no question for the jury on
the issue of abandonment. This is true, because there is no
claim and no evidence of a general abandonment or non-user.

The issue of abandonment is based solely on the removal
of the track from Main Street and the ceasing by the rail-
road to use the track for through trains or for connecting the
depots. Those facts are admitted. Plaintiff admits that it
does not intend again to connect up the two ends of the
track or to put down a track across Main Street. If plaintiff
has lost any right it had by virtue of these undisputed facts,
then the loss must be due to the Court holding that under
the charter the railroad was confined in its use of the right-
of-way solely to that of a connecting track.

Mere non-user, unaccompanied by an intent to abandon,
does not divest the railroad company's easement to its right-
of-way, but the intention with which the act is done is a fact
to be determined by the trial Court or jury from a considera-
tion of the conduct of the party and the surrounding cir-
cumstances; and, although non-user alone does not extin-
guish the easement, a long-continued non-user is some evi-
dence of abandonment. *Home Real Estate Co. v. Los
Angeles Pac. Co.,* 163 Cal., 710, 126 P., 972; *Roby v. N.
Y. C. & H. R. R. Co.,* 142 N. Y., 176, 36 N. E., 1053;
*Townsend v. M. C. R. Co.* (C. C. A.), 101 F., 757; *Louis-
ville Trust Co. v. Cincinnati* (C. C. A.), 76 F., 296; *Gurdon
& Ft. Smith R. Co. v. Vaught,* 97 Ark., 234, 133 S. W.,
1019.

In *People v. Southern Pac. Co.,* 172 Cal., 692, 158 P.,
177 (1916) it was claimed that the failure for a number of

years of the railroad to construct tracks over lands upon which it had an easement constituted an abandonment. In denying the contention, the Court pointed out that there was no evidence of any declaration by the company that it had abandoned its rights, nor was it shown that up to the time of the motion the public interest demanded the construction of the tracks.

The Court quoted with approval the following from 33 Cyc., 222: "As a general rule, in order to constitute an abandonment of an easement in a right-of-way by a railroad company, there must be a non-user accompanied by unequivocal and decisive acts on the part of the company, clearly showing an intention to abandon. * * * In the absence of a statute, mere non-user for any length of time will not work an abandonment."

The case of *Raleigh, C. & S. R. Co. v. McGuire,* 171 N. C., 277, 88 S. E., 337, 339, is as nearly parallel with the case at bar as one could well be. The railroad company had acquired an easement for its railroad under a deed stipulating that upon its permanent abandonment it should revert. After using such right-of-way for a number of years, a portion of the line was relocated so that the track over the land in question was no longer used for main line purposes, but was used as a spur track. It was claimed that this constituted an abandonment and worked a reverter. In discussing whether, under the facts, the trial Court should have granted a prayer that the jury be instructed to find "no" on the question of abandonment, the Court said:

"This brings us to consider the essential elements of an abandonment. It includes both the intention to abandon and the external act by which such intention is carried into effect. There must be a concurrence of the intention with the actual relinquishment of the property. It is well settled that to constitute an abandonment or renunciation of a claim to property, there must be acts and conduct, positive, unequivocal and inconsistent with the claim of title. Mere lapse

of time or other delay in asserting the claim, unaccompanied by acts clearly inconsistent with the right, do not amount to a waiver or abandonment. 1 Cyc., 3; *Banks v. Banks,* 77 N. C., 186; *Faw v. Whittington,* 72 N. C., 321; *Miller v. Pierce,* 104 N. C., 391, 10 S. E., 554; *Boone v. Drake,* 109 N. C., 82, 13 S. E., 724.

"The defendant contended that the plaintiff changed its main line and diverted it from the old right-of-way and relocated it by acquiring another right-of-way, and that it has entirely ceased to use the old right-of-way for all railroad purposes, thereby manifesting by its acts an unequivocal purpose to abandon it, and that therefore defendant, as Fuquay's grantee under the deed of December 24, 1912, has the right to enter.

"If the facts are found in accordance with this contention, the plaintiffs would not be entitled to the relief asked. The plaintiffs admit that the main line has been diverted from its former course and rebuilt on other land acquired from other parties as the exigencies of its passenger traffic demanded it, but it avers that the old right-of-way covering the land in controversy has not been abandoned, that it has been continuously occupied up to the present, as a spur track and such spur track is used daily by freight trains and cars in the handling and delivery of freight.

"If these facts be true, there would be no abandonment and plaintiff would be entitled to the relief asked. It is well settled that a railroad company does not abandon the land on which it has constructed its tracks so as to entitle the owner to revoke its license by ceasing to operate freight or passenger trains over it, where it continues to use it for purposes incident to and connected with its business in operating the road. 33 Cyc., 223, and cases cited in notes: *Ft. Worth, etc., R. R. Co. v. Sweatt,* 20 Tex. Civ. App., 543, 50 S. W., 162.

"It is immaterial whether plaintiff acquired the land for its present main line track from Fuquay or from other

persons. It had a right to do so, and to divert its main line if thereby it increased its facilities to serve the public. It did not thereby forfeit and abandon that portion of its old right-of-way if it continued to occupy it with its track and to use such track for railroad purposes."

In *Schenck v. R. Co.*, 11 Ohio App., 164, it was held substantially that to constitute abandonment of right-of-way there must be non-user together with intention to abandon. The intention can be established by unequivocal and decisive acts clearly indicative thereof. Where a railroad moves its main tracks from a right-of-way, but continues to use the right-of-way for railway purposes in storing cars and for access to certain stock pens, non-user is not established.

In the present case, neither non-user, misuse, nor intention to abandon has been shown. See 2 Elliott R. R. (3d Ed.), § 1142, showing that abandonment is largely a question of intention. It can hardly be said that the company intended to abandon either section of the link when it is daily serving the industrial enterprises located on or near its original right-of-way.

Under these authorities, and the evidence in this case, I think that the presiding Judge erred in directing a verdict for defendant; that on the contrary he should have directed a verdict for plaintiff for the strip of land one hundred (100) feet wide from the center of its track on the west side, and granted a mandatory injunction requiring defendant to remove his warehouse and fence therefrom.