504 S.E.2d 347

**Becky S. COLLINS, individually and on behalf of her minor son, Miles R. Collins, and Shawn Collins, Respondents,**

v.

**BISSON MOVING & STORAGE, INC., Appellant.**

**No. 2870.**

Court of Appeals of South Carolina.

Heard June 2, 1998.
Decided July 20, 1998.
Rehearing Denied Sept. 18, 1998.

Eric G. Fosmire, of Collins & Lacy, Columbia, for Appellant.

Michael A. Maucher, of DeLuca & Maucher, Goose Creek; and Daniel E. Henderson, of Peters, Parker, Eltzroth & Detrick, Ridgeland, for Respondent.

ANDERSON, Judge:

Becky Collins brought this action against Bisson Moving & Storage, Inc. for personal injuries that she alleged resulted from a collision between a Bisson tractor-trailer and an ambulance in which she was riding. Collins was being transported to the hospital after her parked car was struck by a vehicle driven by Jean Wiles. The Bisson truck struck the ambulance as it pulled onto the interstate. Bisson admitted negligence, but contested whether the accident with Bisson's truck proximately caused Collins's injuries. The trial court granted a directed verdict in Collins's favor on the issues of liability and damages, while leaving the amount of damages for the jury to determine. Bisson appeals that ruling and the trial court's refusal to grant Bisson a damages offset for the amount paid to Collins by Jean Wiles in settlement of the first accident. We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

In November of 1992, Collins and her son Miles were traveling through South Carolina on I–95 on the way to their home in Florida when they encountered heavy rain near Ridgeland. Collins pulled onto the emergency lane of the interstate to wait out the storm. Traveling behind Collins in the southbound lane, Jean Wiles lost control of her car when the vehicles in front of her slowed due to the heavy rain. Wiles ran off onto the shoulder of the road and struck Collins's parked car, causing damage to both cars and knocking Collins's car into a ditch.

Collins and Miles emerged fairly unscathed from the accident. Miles did not appear to be injured, and Collins complained only of a bump on the head and of being temporarily dazed. Although Collins did not want to go to the hospital, arriving ambulance personnel assured her that she could contact her husband if transported. Collins agreed, and she and Miles were placed in an ambulance for transport to Low Country General Hospital. Collins was immobilized on a backboard and fitted with a neck brace for the trip. Miles sat in front with the driver. As the ambulance pulled onto the interstate, an eighteen-wheeler owned by Bisson jackknifed and struck the back of the ambulance, tossing it across the emergency lane and into a ditch. The force of the impact jammed an ambulance attendant's foot into a crevice in the base of Collins's stretcher and left a dent in the vehicle's interior where the attendant was thrown by the collision.

This second accident left Collins screaming in pain. She complained of an injured head, back, shoulder, and leg. Collins eventually underwent knee and back surgery. Collins accepted a settlement from Jean Wiles for $25,000 for the injuries she sustained in the first accident. Collins filed the current action against Bisson for injuries she and her minor son Miles sustained in the second accident, and Collins's husband, Shawn, brought an action for loss of consortium. At trial, Collins claimed, in addition to these physical injuries, that she suffered from depression and permanent, short-term memory loss due to the collision with the Bisson truck. Miles suffered from bedwetting and problems in school brought on by the trauma of the accident.

At the close of her case, Collins moved for a directed verdict on the issue of her entitlement to damages in "some amount," stating Bisson had admitted liability. The judge decided to delay ruling on the motion until the close of Bisson's case; however, the judge remarked that he believed "the evidence has established that some injury has occurred." Bisson then moved for a directed verdict as to "causation," which the judge denied, explaining, "There is clearly testimony in the record concerning injury. The degree thereof, that's for the jury." At the close of all the evidence, Collins renewed her motion for

a directed verdict [1] and the judge granted Collins's motion, stating:

> The court would find in that regard that it could not allow a verdict for the defendant in this case. There has been proven damages of some type. The amount of which is fine. I'll leave that for their [the jury's] determination. But the court would direct a verdict as to proximate cause and will submit only one verdict in each of the three cases and that is actual damages in the amount of blank. . . . I will give the charge on proximate cause, that that has to be proven by the preponderance of the evidence together with those typical damage issues which we'll charge but—but I believe that the jury must conclude there was some damage based on the—all the testimony that we have.

The judge essentially granted a directed verdict as to liability and damages, while leaving the determination of the amount of damages to the jury. During the trial court's instructions to the jury, the judge explained:

> Now, as I have stated to you, the issues that you are to consider have been somewhat narrowed in that you are to consider only the issue of damages. Now, that doesn't mean, ladies and gentlemen, that I, by my instruction on damages, are [sic] telling you that you have to bring any certain amount because that's up to you to determine what's been established by the greater weight or preponderance of the evidence.

The trial court also instructed the jury on the use of the verdict form, telling them the amount of damages was to be determined solely by the jury:

> To assist you in reporting your verdict and only to assist you I have prepared a two-page verdict form which I will send back with all the other exhibits. . . . It says, "We the jury in the above entitled action find as follows" and that will mean that you are unanimous.

---

**1.** Collins's attorney told the court, "Your Honor, please, at this time I renew the motion made at the end of the plaintiff's case that his Honor directed—that his Honor directed [sic] a verdict as to a finding that the plaintiff has proved that we are entitled to some damages on each of the three cases, that being the personal injury case of Miss Becky Collins, the personal injury case of young Miles and, of course, the consortium of Shawn Collins."

One, for the plaintiff Becky Collins in the amount of blank dollars. Now, that amount is just like that. It is for you. You determine what should go in that amount, what the plaintiffs have proved by the greater weight or preponderance of the evidence ... is her damage and what you believe is fair, just, and reasonable for that damage. You would write that just like you do a check, first lines in words [sic] in the parenthesis in numbers.

After deliberations, the jury returned with a verdict of $600,000 in favor of Collins.[2] The trial court denied Bisson's motion to offset the damages award by $25,000—the amount paid by Wiles to Collins in settlement of the injuries she sustained in the first accident. Bisson appeals, arguing the trial court erred in granting Collins's directed verdict motion and in denying its request for a damages offset.

## ISSUES

(1) Did the trial court err in granting a directed verdict on the issues of liability and damages?

(2) Did the trial court err in refusing to grant Bisson a damages offset for the amount paid to Collins by Jean Wiles?

## STANDARD OF REVIEW

■ When considering a motion for a directed verdict, the trial court must view the evidence and all reasonable inferences in the light most favorable to the non-moving party. If the evidence as a whole is susceptible of more than one reasonable inference, the case should be submitted to the jury. *Gamble v. Int'l Paper Realty Corp.*, 323 S.C. 367, 474 S.E.2d 438 (1996); *Rice v. Multimedia, Inc.*, 318 S.C. 95, 456 S.E.2d 381 (1995). *See also Creech v. South Carolina Wildlife & Marine Resources Dep't*, 328 S.C. 24, 491 S.E.2d 571 (1997) (in ruling on a motion for a directed verdict, the trial court must view the evidence and the inferences that reasonably can be

---

**2.** The jury also returned verdicts for Collins's son Miles and her husband, Shawn; however, Bisson does not challenge these awards on appeal.

drawn therefrom in the light most favorable to the party opposing the motion).

In ruling on a directed verdict motion, the trial court is concerned only with the existence or non-existence of evidence, and the court does not have the authority to decide credibility issues or to resolve conflicts in the testimony. *Garrett v. Locke,* 309 S.C. 94, 419 S.E.2d 842 (Ct.App.1992).

In reviewing the grant of a directed verdict, the appellate court should not ignore facts unfavorable to the opposing party. Rather, it must determine whether a verdict for the opposing party would be reasonably possible under the facts as liberally construed in his favor. *Bultman v. Barber,* 277 S.C. 5, 281 S.E.2d 791 (1981). *See also Hanahan v. Simpson,* 326 S.C. 140, 485 S.E.2d 903 (1997) (in reviewing a directed verdict, the appellate court must determine whether a verdict for the party opposing the motion would have been reasonably possible under the facts; the question becomes one of law for the trial court where only one reasonable inference can be deduced from the evidence); *First State Sav. & Loan v. Phelps,* 299 S.C. 441, 385 S.E.2d 821 (1989) (in reviewing the granting of a motion for directed verdict, we should determine the elements of the action alleged and whether any evidence existed on each element).

## LAW/ANALYSIS

### 1. DIRECTED VERDICT

Bisson first argues there was ample evidence in the record showing Collins's injuries could have been caused solely by the first accident or by her subsequent employment as a health-care aid. We disagree. Initially, we note Bisson conceded its driver was negligent in causing the accident in exchange for Collins's agreement not to seek punitive damages. At the start of the trial, the judge informed the jury:

Negligence has been agreed to. The defendant say[s], yes, you're right, I was careless. But the issue now for you to resolve is whether or not there was any injury and if there was, was it proximately caused by the negligence.

In granting Collins's motion for a directed verdict at the close of all the evidence, the judge found Bisson was not only

negligent in causing the accident, but that its negligence did cause injury to Collins. The judge essentially granted a directed verdict as to liability and damages, finding the only reasonable inference was that *some* injury was proximately caused by the collision, while leaving the amount of damages up to the jury. The jury was instructed on proximate cause to aid it in evaluating *which* of Collins's injuries were proximately caused by the second accident and in making a proper determination of the resulting damages.

In reviewing this case on appeal, we must determine whether the jury could have properly drawn the inference that Collins was not injured in any way by the second accident. We are mindful that the evidence and all reasonable inferences must be viewed in the light most favorable to Bisson. The case should be submitted to the jury only if more than one inference may reasonably be drawn from the evidence.

## Evidence Regarding Collins's Injuries [3]

Officer Clarence Harrison testified that when he arrived at the scene after the first accident, Collins was walking around and did not appear to be seriously hurt. On the accident report, Harrison indicated there were no injuries. While investigating the first accident, he observed the Bisson truck as it jackknifed. Harrison stated the truck "zoomed right on by" and sideswiped another vehicle before striking the ambulance in which Collins was being transported.

Jean Wiles testified Collins was calm and walking around after the first accident. Collins complained only of a bump on the head.

Paramedic Joseph Schaefer testified Collins did not appear to be in any distress after the first accident. He felt a lump on the back of her head; however, Collins did not complain of any neck injuries or other pain. Collins agreed to go the hospital so she could contact her husband. In contrast, Schaefer testified that after the second accident, Collins was "floundering around like a fish out of water and yelling and in pain." Collins was in a lot of pain and "screaming at the highest point of her voice." Schaefer observed Collins's head had come out

---

3. We note the spelling of the names of some of the witnesses varies in the Record on Appeal and in the briefs of the parties.

of the head immobilizer and the cervical collar she was wearing had become twisted during the crash. Schaefer was thrown into the air by the force of the impact and his foot became wedged under the base of the stretcher. He was thrown against the inside of the ambulance, leaving a dent in the interior. Schaefer suffered injuries to his foot, his left shoulder and his left hip. He stated the ambulance sustained more extensive damage than is visible in the photographs taken after the accident.

The ambulance driver, Robert Nelson, testified that the impact from the eighteen-wheeler was "pretty hard" and strong enough for his head to dent the panel behind the driver's seat of the ambulance. Nelson sustained injuries to his neck, back, and head.

EMT Luda Wahlfeldt assisted in transporting Collins to the hospital after the second accident. Wahlfeldt testified she spoke to Collins immediately after the second accident and Collins complained of pain in her lower back and right shoulder. Wahlfeldt stated she did not know what injuries Collins might have suffered from the first accident.

Dr. Hector Esquivel, a staff physician at Low Country General Hospital, testified that upon arrival at the hospital, Collins complained of severe back pain. She also had a tingling sensation in her right arm. He diagnosed Collins as having a sprain of the thoracic and lumbar spine, a head contusion, and a scalp hematoma. Bisson argues Dr. Esquivel testified Collins's spinal injuries might have come from the first accident. This is true. Dr. Esquivel stated he could not rule out the possibility that there were spinal injuries from the first accident. However, he went on to say that in his opinion, to a reasonable degree of medical certainty, the second accident caused *most* of the injuries to Collins, and that the most severe injuries, those to her back, were caused by the second wreck. Importantly, Dr. Esquivel never stated Collins was not injured at all in the second accident.

Collins herself testified that she only had a bump on the head after the first accident. She stated that in the second accident, she "came up in the air and back down" while on the backboard. The cervical collar became twisted around her neck, and her "head got banged in the back real bad." Collins

testified her back "cracked" and her left leg was twisted from the impact.

Wendell Alvin Haney of the Coosawhatchie Fire Department corroborated Collins's testimony regarding her apparent lack of injuries after the first accident and Schaefer's description of Collins's demeanor after the second accident. Haney said he heard "[a] big bang" when the Bisson tractor-trailer struck the left rear of the ambulance, and that the impact lifted the ambulance into the air, knocking it into a ditch by the side of the highway.

Bisson points to Dr. Jeffery Greenspoon's testimony in support of its argument that a directed verdict was improper. Dr. Greenspoon, a Board certified orthopaedic surgeon, testified he performed a diagnostic arthroscopy to determine the cause of the pain, swelling, and aching in Collins's left knee. He did not state an opinion as to which accident may have caused the injury to Collins's knee. Dr. Greenspoon testified Collins's knee problem was "minimal," and she probably didn't require any surgery for the knee to heal. Dr. Greenspoon stated he did not think someone could have *twisted* a knee while strapped to a backboard, although it would be possible to sustain a contusion or have something hit or strike the knee. He stated Collins's knee injury was "more consistent in my opinion with a blunt trauma like a contusion than it is with a ... twisting [of the knee]." At no time, however, did Dr. Greenspoon state an opinion regarding whether Collins suffered *other* injuries from the Bisson collision. Dr. Greenspoon only treated Collins for knee problems.

Dr. Edward Bittar, a Board certified orthopaedic surgeon, testified that in his opinion, to a reasonable degree of medical certainty, Collins's knee injury most probably resulted from the Bisson accident. He stated the injury was consistent with a twisting of the knee and diagnosed the injury as a subluxated (partially dislocated) kneecap. He stated his next treatment option would be to perform a surgical realignment.

Dr. Richard Holgate, a neuroradiologist, testified that Collins's herniated disk at C6–7 was most probably caused by the second accident.

Dr. Douglas Mogle, a neurologist, testified that he believed the first accident was the most probable cause of Collins's

*cervical* injuries. He referred her to a physical therapist for the problems with her knee. The physical therapist reported to Mogle that Collins had pain upon hip flexion and knee extension.

Dr. Paul Pritchard, a neurologist, testified he could not exclude the first accident as a cause of Collins's whiplash/cervical injuries. He stated injuries do not immediately manifest themselves at the time of the accident. Dr. Pritchard testified he could not state, to a reasonable degree of medical certainty, which of the two accidents most probably caused the bulging of Collins's cervical disk which was apparent on an MRI (magnetic resonance imaging) scan.

The following medical providers attempted to apportion Collins's injuries between the two accidents. Implicit in this apportionment is the notion that the Bisson accident was responsible for some of Collins's injuries.

Dr. Gary Weiss, a neurologist and member of the Board of Medical Examiners, apportioned Collins's injuries as eighty percent from the second accident and twenty percent from the first. Specifically, he testified that, to a reasonable degree of medical certainty, the second accident with Bisson most probably caused Collins's neck and arm injuries; knee injury; herniated disk at C6–7 with the subsequent bulging disk of C5, –6, and –7; lower back herniated disk at L5, S1; and Collins's brain problems as revealed by neuropsychological testing.

In a report prepared by chiropractor Thomas Kraus, Kraus reported Collins advised him that she had immediate head, neck, and upper back pain after the first accident. Kraus testified that as far as the head, neck, and upper back injuries, seventy percent could be apportioned to the first accident and thirty percent to the second accident. However, Kraus testified that in his opinion, the injuries to Collins's mid-back, lower back, and left knee most probably were *solely* attributable to the second accident.

Dr. Scott Kaplan, a clinical psychologist, testified the second accident was more traumatic to Collins than the first accident.

*Propriety of Directed Verdict*

■ After careful examination of the above evidence, we find the only reasonable inference is that the second accident caused *some* injury to Collins. It would strain credulity to say Collins did not sustain *any* injury in the wreck with the Bisson eighteen-wheeler truck. No witness testified Collins was not injured when the ambulance was tossed into the ditch. Even witnesses Bisson cites attributed some of the injuries Collins received to the second accident. Accordingly, the trial judge correctly granted the motion for a directed verdict while leaving the *amount* of the damages to be determined solely by the jury based on its evaluation of the evidence.

Bisson cites *Black v. Hodge*, 306 S.C. 196, 410 S.E.2d 595 (Ct.App.1991) for the proposition that the credibility of the witnesses is for the jury to determine. Bisson's reliance on *Black* is misplaced. Although the general proposition that the jury determines credibility issues is a correct one, there is no issue for the jury when the evidence as a whole admits of only one reasonable inference—that Collins sustained *some* injury in the second collision. The facts of *Black* make it inapplicable to the instant appeal.

In *Black*, the collision between the two vehicles was, by all accounts, slight, yet Mrs. Black alleged she was injured from the impact. Witnesses describing the accident testified that a pickup truck traveling less than 5 m.p.h. "tapped" Mrs. Black's Cadillac from behind, that mud on the truck's front bumper was not knocked off by the impact, and that there was no damage to the Cadillac. However, Mrs. Black testified that she was "severely injured" in the incident, and she submitted bills for medical treatment totaling approximately $14,000. Included in this total was a bill from her husband, who is a chiropractor. She also presented the testimony of other doctors.

The case was submitted to the jury, which returned a verdict for the defendant. Mrs. Black appealed, arguing the jury was required to accept her uncontradicted testimony that she was injured. We held the jury was not required to believe Black's uncontradicted testimony that she was injured, stating: "There remains the question of the inherent probability of the testimony and the credibility of the witness or the

interests of the witness in the result of the litigation." *Id.* at 197, 410 S.E.2d at 596. If there is anything tending to create distrust in the witness's truthfulness, then the question must be left to the jury. *Id.* We concluded that "[t]he fact that the collision between the two vehicles was slight, to say the least, together with the fact that Mrs. Black has an obvious interest in the outcome of the case, is sufficient to cast doubt on the testimony that she was injured[,]" thus making it a jury question. *Id.*

In contrast, in the current appeal, ambulance driver Nelson described the impact of the Bisson eighteen-wheeler with the ambulance carrying Collins as "pretty hard." Paramedic Schaefer stated he was thrown into the air and hit the interior of the ambulance during the impact. A fire department member who was called to the scene of the first accident, Haney, stated the Bisson truck hit the ambulance with "[a] big bang," lifting it into the air and into a roadside ditch. Although some witnesses could not testify as to whether certain injuries sustained by Collins occurred during the first or the second accident, no one testified she was uninjured from the second wreck. Unlike *Black*, the testimony that Collins suffered injuries in the second accident did not rely on the party's own self-interest so as to cast doubt on the testimony that she was injured.

*Boozer v. Boozer,* 300 S.C. 282, 387 S.E.2d 674 (Ct.App. 1988), cited by Bisson for the same proposition regarding credibility issues, is also distinguishable—it did not involve a concession of negligence by a party. In *Boozer* the appellant moved for a new trial based on the inadequacy of the jury verdict. The trial judge denied the motion. We affirmed, holding "the jury could have determined that a portion of the medical bills testified to by [the appellant] were not the result of the [automobile] accident which gave rise to [the] suit." *Id.* at 284, 387 S.E.2d at 676. *See Vinson v. Hartley,* 324 S.C. 389, 402, 477 S.E.2d 715, 721 (Ct.App.1996) ("[T]he trial judge's sole function regarding the issue [of proximate cause] is to inquire whether particular conclusions are the only reasonable inferences that can be drawn from the evidence.").

In *Vinson,* we held that a jury's finding that a driver's injuries were not proximately caused by the accident were

supported by the evidence and would not be disturbed on appeal, stating:

The particular facts and circumstances of each case determine whether the question of proximate cause should be decided by the court or by the jury.... [W]hen the evidence is susceptible to only one inference ... it become[s] a matter of law for the court.

*Id.* at 402, 477 S.E.2d at 722. We believe the evidence in this case is susceptible of only one reasonable inference, that Collins received some injury in the collision with the Bisson truck. Stated another way, no inference can reasonably be drawn that Collins suffered no injuries whatsoever in the second accident.

▮ Moreover, Bisson's own admission during trial supports the granting of Collins's directed verdict and may procedurally bar Bisson from raising this issue on appeal. *See Southern Ry. Co. v. Routh,* 161 S.C. 328, 159 S.E. 640 (1931) (holding directed verdict properly granted where counsel conceded there was no question to be submitted to jury; issue conceded at trial may not be argued on appeal). In its opening statement, Bisson conceded the accident caused some injury to Collins: "[W]e submit to you that the facts will show that Miss Collins's injuries were *primarily caused by this first accident and that they will fail in their burden of proof of showing that her damages were primarily caused in the second accident."* (Emphasis added.). This went far beyond Bisson's earlier admission of negligence. Acts by an attorney are binding on clients through principles of agency law. *See Clark v. Clark,* 271 S.C. 21, 244 S.E.2d 743 (1978).

In *Arnold v. Yarborough,* 281 S.C. 570, 316 S.E.2d 416 (Ct.App.1984), we noted that "[o]ur Supreme Court [has] held there is a vast distinction between the acts of an attorney within his general authority in a matter not in court and his acts during the conduct and progress of a suit in court." *Id.* at 572, 316 S.E.2d at 417 (citing *Ex parte Jones,* 47 S.C. 393, 25 S.E. 285 (1896)). In *Arnold,* we stated:

[T]he employment of an attorney in a particular suit implies his client's assent that he may do everything which the court may approve in the progress of the cause. Upon this distinction in a large measure rest the certainty, verity, and

finality of every judgment of a court. Litigants must necessarily be held bound by the acts of their attorneys in the conduct of a cause in court, in the absence, of course, of fraud.

*Id.* (quoting *Ex parte Jones,* 47 S.C. 393, 397, 25 S.E. 285, 286 (1896)).

The trial court, therefore, was correct in ruling the jury could not reasonably have found in Bisson's favor. Once liability was established, Collins was entitled to some amount of damages, either nominal or otherwise. The judge properly instructed the jury that it must determine which of Collins's injuries were proximately caused by the second accident and assign some amount of damages for those injuries arising from the accident with Bisson. *Cf. Krepps v. Ausen,* 324 S.C. 597, 479 S.E.2d 290 (Ct.App.1996) (when liability is admitted, a plaintiff is entitled to damages unless proof completely falls); *Page v. Crisp,* 303 S.C. 117, 118–19, 399 S.E.2d 161, 162 (Ct.App.1990) ("When liability is admitted, ... a Plaintiff is entitled to an award unless proof completely fails. It is appropriate for the judge in his charge to tell the jury that a Plaintiff is entitled to an award as a matter of law—leaving to the jury whether actual damages alone or actual and punitive damages should be awarded ... We recognize that a jury is not required to believe testimony when reasonable persons could disagree as to facts, but it is not permitted to disbelieve testimony unless there is good reason for questioning the credibility of the witnesses."). Under the particular facts and circumstances of the instant case, the proof did not fail and there was no reasonable basis for questioning the credibility of the witnesses. Collins, therefore, was entitled to an award of damages in some amount as a matter of law, with the amount being left solely to the jury's determination.

## 2. DAMAGES OFFSET

Bisson next argues that in determining any damages owing to Collins from the accident with Bisson, it is entitled to an offset for the $25,000 paid to Collins by Jean Wiles. We disagree.

■ "A well-settled general rule is that partial compensation paid by one tort-feasor may be shown by another tort-

feasor in mitigation or reduction of damages, for the reason that a party can have but one satisfaction for his damages." 25 C.J.S. *Damages* § 98(2) (1966). *See Tubbs v. Bowie,* 308 S.C. 155, 417 S.E.2d 550 (1992) (holding one tortfeasor is entitled to credit for the amount paid by another tortfeasor). However, this rule applies to only those damages for which all tort-feasors are equally liable. 25 C.J.S. *Damages* § 98(2) (1966). "[I]t has been said that where the liability of each tort-feasor is separate and independent of that of the others, the collateral source rule ... applies, so that the damages which are recoverable against one should not be reduced or mitigated because of the damages which have been recovered against the others." *Id.*

The collateral source rule "is a well-established rule in the law of damages [which provides] a wrongdoer is not entitled to have the damages to which he is liable reduced by proving that [the] plaintiff has received or will receive compensation or indemnity for the loss from a collateral source, wholly independent of him, or stated more succinctly, the wrongdoer may not be benefited by collateral payments made to the person he has wronged." *Id.* § 99(1). "South Carolina has long followed the collateral source rule that compensation received by an injured party from a source wholly independent of the wrongdoer should not be deducted from the amount of damages owed by the wrongdoer to the injured party." *Estate of Rattenni v. Grainger,* 298 S.C. 276, 277, 379 S.E.2d 890, 890 (1989).

The collateral source rule provides that compensation received by an injured party from a source wholly independent of the wrongdoer will not reduce the amount of damages owed by the wrongdoer. This rule has been liberally applied in South Carolina to preclude the reduction of damages. The only requirement for qualification as a collateral source is that the source be "wholly independent of the wrongdoer."

Other jurisdictions have specified a source is wholly independent, and therefore a collateral source, when the wrongdoer has not contributed to it ... and when payments to the injured party were not made on behalf of the wrongdoer. . . . On the other hand, it is well-settled that payment

from a joint tortfeasor does not qualify as a collateral source.

*Citizens & S. Nat'l Bank v. Gregory,* 320 S.C. 90, 92, 463 S.E.2d 317, 318 (1995).

■ Bisson's argument for an offset is valid only if Bisson and Wiles are co-tortfeasors, jointly and severally liable for Collins's injuries. This is patently erroneous. Bisson clearly has no liability for the first accident, and Wiles has no liability for the second accident. The amount Wiles paid to Collins was for the settlement of her own accident with Collins and was not made on behalf of Bisson. Moreover, Collins received different injuries in the two accidents. Joint and several liability arises only when two or more tortfeasors are responsible for a *single* injury:

That a single injury, which is the proximate result of the separate and independent acts of negligence of two or more parties, subjects the tort-feasors, even in the absence of community of design or concert of action, to a liability which is both joint and several, is a proposition recognized and approved in this state and supported by the great weight of authority elsewhere.

*Rourk v. Selvey,* 252 S.C. 25, 28, 164 S.E.2d 909, 910 (1968) (quoting *Pendleton v. Columbia Ry., Gas & Elec. Co.,* 133 S.C. 326, 331, 131 S.E. 265, 267 (1926)).

That Wiles and Bisson were responsible for separate tortious acts resulting in separate injuries is immaterial to the jury's award of $600,000 to Collins from the accident with Bisson. Accordingly, the trial court correctly denied Bisson's request for an offset for the amount paid by Wiles to Collins in settlement of the first accident.

## CONCLUSION

We conclude the evidence is susceptible of only one reasonable inference, that Collins suffered some injury in the collision with the Bisson truck. In South Carolina, a trial judge has the authority under Rule 50, SCRCP, to direct a verdict on liability and damages, while leaving the determination of the amount of damages to the sole discretion of the jury. We hold Bisson and Wiles were not joint tortfeasors. Therefore, the trial court did not err in denying Bisson's motion for an

offset for the amount Wiles paid to Collins in settlement of the first accident. Accordingly, the judgment below is

**AFFIRMED.**

HEARN and HOWARD, JJ., concur.