638 S.E.2d 105

**Robert S. BRANNON and Kimberly C. Brannon, Respondents,**

**v.**

**The PALMETTO BANK and Howard Barnard, Defendants,**

**Of whom The Palmetto Bank is the, Appellant.**

**No. 4175.**

Court of Appeals of South Carolina.

Submitted Sept. 1, 2006.

Decided Nov. 6, 2006.

Rehearing Denied Dec. 15, 2006.

F. Marion Hughes, Langdon Cheves, III and Seann Gray Tzouvelekas, all of Greenville, for Appellant.

H. Michael Spivey, of Mauldin, for Respondents.

WILLIAMS, J.:

On appeal, Palmetto Bank contends the trial court erred in refusing to direct a verdict in its favor on Robert and Kimberly Brannon's causes of action for breach of contract and conversion. In the alternative, Palmetto Bank contends the trial court erred in directing a verdict against Palmetto Bank on the Brannons' breach of contract claim rather than submit-

ting the issue to the jury. Additionally, Palmetto Bank argues the trial court erred in allowing the jury to consider evidence of speculative damages. We reverse.

## FACTS

On January 22, 2002, the Brannons bought a house out of foreclosure from Palmetto Bank. Two closings occurred in order to finalize this transaction. The first closing was on a 90–day note for the purpose of giving the Brannons time to sell their former house. The closing held on January 22, 2002, was to refinance the original 90–day note for $155,000.00 plus $5,000.00 in interest charged during the 90–day period by Palmetto Bank. The Brannons' monetary obligation to Palmetto Bank was secured by a mortgage lien on the residence being purchased.

The mortgage agreement required the Brannons to keep the house insured for its full insurable value and required the insurance be payable to Palmetto Bank as a loss payee. Pursuant to the mortgage, the Brannons also assigned to Palmetto Bank "the right to collect and receive any indemnity payment otherwise owed to [the Brannons] upon any policy of insurance insuring any portion of the property, regardless of whether [Palmetto Bank] is named in such policy as a person entitled to collect upon the same."

On February 19, 2002, the Brannons' home was destroyed by fire. An insurance check was issued by the carrier for $185,850.00 and was made payable to the Brannons, Palmetto Bank, and the builders replacing the Brannons' home. Mrs. Brannon took the check to Palmetto Bank, which advised her to open a general deposit account into which most of the insurance proceeds were deposited. Palmetto Bank issued a check to Mrs. Brannon for $25,000 so she could pay her builders.

On the same day the general deposit account was opened, a hold was placed on the account so that the insurance proceeds could not be withdrawn. Two days later, Palmetto Bank withdrew the sum of $160,257.78 from the deposit account and paid off the mortgage debt. Mrs. Brannon later went to Palmetto Bank to withdraw more money in order to pay her builders when she discovered the mortgage had been paid off

and the deposit account was virtually empty. The Brannons then had to receive new financing for the home they were building. Apparently, the Brannons had a history of bad credit which created problems with the financing. Eventually they received financing, but at a much higher interest rate than what they had with the previous mortgage. When the Brannons learned that Palmetto Bank had used the deposit account to satisfy the mortgage debt, this litigation ensued.

At trial, testimony showed the Brannons were aware there was a possibility that the insurance proceeds could be used to pay off the mortgage debt. Palmetto Bank explained that this procedure is meant to be beneficial for both the lender and the borrower. It is beneficial to the borrower because when the existing loan gets paid off, the borrower under the new construction loan pays interest only on the amount that has been advanced rather than the full principal amount of the existing loan. It is beneficial to the lender because, after the fire has destroyed the house, the lender's only collateral is the vacant lot.

The trial court found, as a matter of law, Palmetto Bank was liable to the Brannons for breach of contract. The determination of damages owed on the breach of contract claim and the liability and damages owed on the conversion claim were submitted to the jury. Subsequently, the jury found Palmetto Bank liable on the conversion cause of action and awarded damages in the amount of $133,000. Palmetto Bank filed motions seeking a judgment notwithstanding the verdict or, in the alternative, a new trial, which were denied. This appeal followed.

## STANDARD OF REVIEW

When ruling on directed verdict or JNOV motions, the trial court must view the evidence and the inferences that reasonably can be drawn therefrom in the light most favorable to the nonmoving party. *Sabb v. S.C. State Univ.*, 350 S.C. 416, 427, 567 S.E.2d 231, 236 (2002). If the evidence as a whole is susceptible to more than one reasonable inference, a jury issue is created and the motion should be denied. *Adams v. G.J. Creel & Sons, Inc.*, 320 S.C. 274, 277, 465 S.E.2d 84, 85 (1995); *Bailey v. Segars*, 346 S.C. 359, 365, 550 S.E.2d 910, 913

(Ct.App.2001). However, this rule does not authorize submission of speculative, theoretical, and hypothetical views to the jury. *Hanahan v. Simpson,* 326 S.C. 140, 149, 485 S.E.2d 903, 908 (1997). In reviewing a grant of a directed verdict, the appellate court should not ignore facts unfavorable to the opposing party. *Collins v. Bisson Moving & Storage, Inc.,* 332 S.C. 290, 295–96, 504 S.E.2d 347, 350 (Ct.App.1998). In essence, the court must determine whether a verdict for the opposing party "would be reasonably possible under the facts as liberally construed in his favor." *Harvey v. Strickland,* 350 S.C. 303, 309, 566 S.E.2d 529, 532 (2002).

## LAW/ANALYSIS

### I. Directed Verdict on Breach of Contract (Mortgage and Deposit Agreement) Cause of Action

Palmetto Bank contends the trial court erred in failing to direct a verdict in its favor on the Brannons' breach of contract cause of action. In the alternative, Palmetto Bank asserts it was error to direct a verdict in favor of the Brannons and in failing to submit the issue to the jury. We agree the court erred in not directing a verdict for Palmetto Bank on the breach of contract cause of action.

Paragraph 3 of the mortgage agreement gives Palmetto Bank four options in dealing with the insurance proceeds:

Any indemnity payment received by [Palmetto Bank] from any such policy of insurance may, at the option of [Palmetto Bank], (i) be applied by [Palmetto Bank] to payment of any sum secured by this Mortgage in such order as [Palmetto Bank] may determine or (ii) be applied in a manner determined by [Palmetto Bank] to the replacement, repair or restoration of the portion of the Property damaged or destroyed or (iii) be released to [the Brannons] upon such conditions as [Palmetto Bank] may determine or (iv) be used for any combination of the foregoing purposes.

The trial court found as a matter of law that Palmetto Bank's deposit of a portion of the insurance proceeds into the deposit account constituted an unconditional "release" of those proceeds under paragraph 3(iii) of the Mortgage. The trial court further found: (1) once Palmetto Bank had chosen this

option under paragraph 3(iii), it had no right of set-off against the deposit account to satisfy the Mortgage debt; and (2) in setting off against the deposit account, Palmetto Bank became liable to the Brannons as a matter of law for breach of contract.

The Brannons claim Palmetto Bank unconditionally released the insurance proceeds to them and cannot now revoke the release. "Release" is defined as "the act of giving up a right or claim to the person against whom it could have been enforced." *Black's Law Dictionary* 1292 (7th ed. 1999). While it is true Palmetto Bank may have released a portion of the insurance proceeds to the Brannons, the remaining money was placed in a general deposit account. The agreement pertaining to the deposit account contained a paragraph entitled "Set–Off" which gave Palmetto Bank the specific right, without prior notice to the Brannons, to "set-off the funds in this account against any due and payable debt owed...." By placing the funds into a deposit account with a set-off provision, Palmetto Bank was not releasing its right or claim to the insurance proceeds. Because both parties retained control over the proceeds placed in the deposit account, the release cannot be seen as absolute. To come to the conclusion of the trial court, a release must have been a complete and total release.

Option (iv) of the mortgage agreement gave Palmetto Bank the ability to choose any of the other three options in any combination it wished. Palmetto Bank chose to release a portion of the proceeds and pay off the mortgage with the remainder. Pursuant to the mortgage agreement, Palmetto Bank was within its rights to do so. *See MGC Mgmt. of Charleston, Inc. v. Kinghorn Ins. Agency,* 336 S.C. 542, 548, 520 S.E.2d 820, 823 (Ct.App.1999) (stating court must construe contract in a way "which will give effect to the whole instrument and each of its various parts"). Accordingly, the trial court erred in failing to direct a verdict in Palmetto Bank's favor concerning the breach of contract issue.[1]

---

1. Palmetto Bank also contends the trial court erred in stating Palmetto Bank waived its right to apply the insurance proceeds to the outstanding mortgage debt by placing the funds in a deposit account. However, the trial court did not make the finding Palmetto Bank waived its rights to the insurance proceeds. However, had the trial court come to such

## II. Directed Verdict on Conversion Cause of Action

Palmetto Bank contends the trial court erred in failing to direct a verdict in its favor on the Brannons' conversion cause of action. We agree.

"Conversion is the unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of the condition or the exclusion of the owner's rights." *Crane v. Citicorp Nat'l Servs., Inc.*, 313 S.C. 70, 73, 437 S.E.2d 50, 52 (1993). "Conversion may arise by some illegal use or misuse, or by illegal detention of another's personal property." *Regions Bank v. Schmauch*, 354 S.C. 648, 667, 582 S.E.2d 432, 442 (Ct.App.2003). "Conversion is a wrongful act which emanates by either a wrongful taking or wrongful detention." *Id.*

As a matter of law, Palmetto Bank is not liable for conversion of the insurance proceeds because its use of the funds was not an unauthorized taking as Palmetto Bank had a legal right to the funds. In fact, the case of *Richardson's Rests., Inc. v. The Nat'l Bank of South Carolina*, 304 S.C. 289, 294, 403 S.E.2d 669, 672 (Ct.App.1991), states that a bank cannot be liable for conversion of funds deposited into a payroll account because the deposits "become part of the [b]ank's general account against which [the depositor's] account received a credit." This Court went on the say this is true, "even though [the depositor] intended to use the account for a particular purpose." *Id.* at 295, 403 S.E.2d at 672. This position is only bolstered by the right of set-off pursuant to the deposit agreement, as discussed above. Accordingly, the trial court erred in failing to direct a verdict in favor of Palmetto Bank on the issue of conversion.

## III. Evidence of Speculative Damages

Palmetto Bank contends the trial court erred in allowing the jury to consider evidence of speculative damages. Because we

---

a conclusion, it would have been in error. "Waiver is the voluntary and intentional relinquishment of a known right." *MailSource, LLC v. M.A. Bailey & Assocs., Inc.*, 356 S.C. 370, 375, 588 S.E.2d 639, 641 (Ct.App.2003). Palmetto Bank's action did not constitute a waiver as there was clearly no intent on its part to relinquish its rights to the insurance proceeds.

reverse on the two previous issues, we need not reach the issue of speculative damages. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (An appellate court need not address remaining issues when disposition of prior issue is dispositive.).

## CONCLUSION

For the reasons stated herein, the trial court's decision is **REVERSED.**[2]

GOOLSBY, and BEATTY, JJ., concur.

---

2. We decide this case without oral argument pursuant to Rule 215, SCACR.