0551

Frank J. LENGEL and Elizabeth C. Lengel, Respondents v. TOM JENKINS REALTY, INC., Appellant.

(334 S. E. (2d) 834)

Court of Appeals

*Steven M. Anastasion* of *Callison, Tighe & Rush,* Columbia, *for appellant.*

*John R. Holland* of *Whaley, McCutchen, Blanton & Rhodes,* Columbia, *for respondents.*

Heard June 18, 1985.

Decided Sept. 11, 1985.

CURETON, Judge:

Respondents Frank and Elizabeth Lengel brought this negligence and conversion action against the appellant Tom Jenkins Realty, Inc. The jury awarded them $793.67 actual and $3,000 punitive damages on the negligence cause of action and $570 on the conversion cause of action. Tom Jenkins appeals only the negligence awards. We affirm the award of actual damages and reverse the award of punitive damages.

In late July or early August 1979 the Lengels contacted William Buchanan, an agent of Tom Jenkins, seeking assistance in locating a home in Columbia. At that time Mr. Lengel was employed by the Marine Corps and resided out of state. He expected to leave the service in December 1979 and wanted to settle his family in Columbia by October 31, 1979, so that his wife could find employment prior to the time he became unemployed. Mr. Buchanan showed the Lengels many homes and the Lengels attempted to purchase one home but their offer was rejected by the seller because the Lengels' contract provided that they would consummate the sale only if Mrs. Lengel could find employment. Thereafter, in early September Mr. Lengel instructed Mr. Buchanan that he would only enter into a contract without contingencies. He emphasized the importance of finding a place for his family to live so that his wife could begin to search for work.

In mid-September 1979 Mr. Buchanan showed the Lengels a house owned by Ronald and Donna Tunstill which was listed with Tom Jenkins. The house was under contract at the time it was shown. Nonetheless, the Lengels offered a backup contract which the Tunstills accepted. This contract contained no contingencies. On September 19, 1979, the agent told them that the first contract had fallen through and that they "had a home." In mid-October Mr. Buchanan

informed Mrs. Lengel that the Tunstills did not plan to close the sale because they could not purchase the home which they had planned to purchase. A few days later, the Lengels household goods were packed, their government quarters were vacated and they arrived in Columbia. The Tunstills continued to refuse to sell their home.

In June 1980 the Lengels sued the Tunstills for specific performance. The Lengels settled that suit because, according to Mr. Lengel, he learned that Mr. Bailey knew about the "suitable housing" contingency from the time Tom Jenkins undertook to sell the Tunstills' home. This information was not given to Mr. Lengel prior to his entering into a contract with the Tunstills.

In December 1981 this action was instituted by the Lengels against Tom Jenkins. They alleged in their complaint that Tom Jenkins was negligent in failing to follow their instructions and in the manner in which it performed the duties owed to them. They also claimed that Tom Jenkins committed a conversion by wrongfully withholding $500 earnest money.

Ronald Tunstill testified at trial that although his contract with the Lengels contained no contingencies, he made it clear to Alston Bailey, another Tom Jenkins' agent, that he and his wife would not sell their house unless they found "suitable housing." He defined "suitable housing" as affordable housing in the Elgin, Lugoff, or Camden area. By mid-September the Tunstills had signed a contract to purchase a home in a new subdivision in Lugoff. Mr. Tunstill testified that FHA financing was "a part of the contract" to buy the new home. This contract was prepared by Mr. Bailey who testified that he knew that the Tunstills wanted FHA financing and that as of the date the Lengels signed the contract to buy the Tunstills' home, FHA financing was not yet available for the new home. By late September the Tunstills learned that FHA financing would not be available for the new subdivision and they decided not to sell their home.

The Lengels offered expert testimony to the effect that Tom Jenkins erred in not listing the "suitable housing" contingency in the listing agreement; in not listing the "suitable housing" contingency in the sales contract between the Lengels and the Tunstills; and in not telling the Lengels

about this contingency. The record of the expert's testimony also provides:

Q. You are not suggesting in any way that Tom Tenkins Realty Company did anything unethical?

A. No, sir. The only thing that I'm saying is that when you are aware of something that all parties should be aware. No, sir, I'm not questioning their ethics.

"In an action at law, on appeal of a case tried by a jury, the jurisdiction of [an appellate court] extends merely to the correction of errors of law, and a factual finding of the jury will not be disturbed unless a review of the record discloses that there is no evidence which reasonably supports the jury's findings." *Townes Associates, Ltd. v. City of Green-ville*, 266 S. C. 81, 85, 221 S. E. (2d) 773, 775 (1976). "Reversal of the jury's verdict can only result when the sole reasonable inference which can be drawn from the evidence is contrary to the factual findings implicit in its verdict." *Moran v. Jones*, 281 S. C. 270, 271, 315 S. E. (2d) 136, 137 (Ct. App. 1984).

We find that the Lengels "employed the Defendant to ■ act as their real estate agent in purchasing a house in Columbia, South Carolina" because the parties stipu-lated to this fact in the statement of the case.[1] An agreed statement of the case is binding on the parties. *Crown Land Corp. v. Lester Brothers, Inc.*, 261 S. C. 163, 166, 199 S. E. (2d) 69, 70 (1973).

In *Lowrance v. Swafford*, 123 S. C. 331, 116 S. E. 278 (1923) the Supreme Court set forth a real estate broker's duties and indicated that the liability of the broker for the breach of such duties is a jury question. The duties set forth by the Court are as follows:

"It is elementary that a broker is bound to act in compliance with the instructions of his principal and in conformity to the authority conferred; that he is bound to *disclose all material facts* and to exercise reasonable

[1]. We recognize that a real estate agent employed by a seller to sell his home is ordinarily the seller's agent. *See generally* R 105-18 to 19, 1976 Code of Laws of South Carolina. We do not hold in the usual case where a real estate agent brings a buyer to the seller that a fiduciary relationship exists between the buyer and the seller's agent.

skill and diligence in the transaction of business entrusted to him; and that he will be responsible for any loss resulting from his failure to do so." (emphasis added)

123 S. C. at 333, 116 S. E. at 278. *See also* 12 Am. Jur. (2d) *Brokers* Section 84 (1964); 12 C.J.S. *Brokers* Sections 52, 53, 56 and 57 (1980).

The key question in this case is whether there is any ■ evidence in the record to support the proposition that Tom Jenkins failed to disclose all material facts to the Lengels. We find that there are reasonable inferences to be drawn from the evidence that Tom Jenkins breached its duty to make a full disclosure of all material facts to the Lengels because it knew that the Tunstills would not sell their home unless they found another home that was affordable. Further, Mr. Bailey knew that the Tunstills wanted FHA financing which would make the purchase of their new home "affordable." The possibility that the sellers would avoid the sale because they might not be able to obtain desired financing was not disclosed to the Lengels. Certainly, a jury could find that this was material information as pertains to the Lengels. Mr. Buchanan should have known that this information may have influenced the Lengels' decision to enter into the contract. *See Virginia Real Estate Commission v. Bias*, 226 Va. 264, 308 S. E. (2d) 123, 125-26 (1983) (a broker's duties include "an obligation to disclose to the principal all facts within his knowledge which are or may be material, or *which might influence the principal in deciding upon a course of action.")* (emphasis added). For the foregoing reasons, we affirm the award of actual damages because we find that there is evidence which supports the jury's finding that Tom Jenkins breached its duty to make full disclosure of material facts to the Lengels.

We now consider the punitive damages award. We ■ find no evidence in the record to support an award of punitive damages. "A plaintiff is entitled to recover punitive damages if the act complained of is determined to be willful, wanton or reckless." *Camp v. Components, Inc.*, _____ S. C. _____, 330 S. E. (2d) 315, 316 (Ct. App. 1985). "Punitive damages are awarded for the purpose of punishing a tort feasor for such an exhibition of recklessness or

negligence as evidences malice or the conscious disregard of the rights of others." *Willis v. Floyd Brace Co.*, 279 S. C. 458, 463, 309 S. E. (2d) 295, 298 (Ct. App. 1983). Punitive damages are not awarded for mere negligence. *Hicks v. McCandlish*, 221 S. C. 410, 415, 70 S. E. (2d) 629, 631 (1952) ("Gross negligence is a relative term, and means the absence of care that is necessary under the circumstances, but the absence of this care alone, whether called 'gross' or 'ordinary' negligence, does not authorize the jury to give exemplary damages."). Here, there is no evidence of reprehensible conduct deserving of punishment. It is undisputed that the contract between the Lengels and the Tunstills on its face met Mr. Lengel's requirements. Moreover, the Lengels' expert witness testified that he did not question Tom Jenkins' ethics; rather he intimated that Tom Jenkins committed mere errors of judgment. For these reasons the punitive damages award is reversed.

Affirmed in part and reversed in part.

SHAW and BELL, JJ., concur.