1828

O.C. GRUBER, Appellant-Respondent v. SANTEE FROZEN FOODS, INC., Respondent-Appellant v. WEBER PRODUCE, INC., Respondent.
(419 S.E. (2d) 795)

Court of Appeals

14

*John E. Parker,* of *Peters, Murdaugh, Parker, Eltzroth & Detrick,* Hampton, *for appellant-respondent.*

*Heyward McDonald,* of *McDonald, McKenzie, Fuller, Rubin & Miller,* Columbia, *for respondent-appellant.*

*Michael P. Horger,* of *Horger, Horger, Nance & Lanier,* Orangeburg, *for respondent.*

Heard April 7, 1992; Decided May 26, 1992.

On Reh. July 2, 1992.

GARDNER, Judge:

O.C. Gruber (Gruber) sued Santee Frozen Foods, Inc. (Santee), Weber Produce, Inc., and James Weber (Weber) individually, and alleged that as an agent of Santee and Weber Produce, Weber represented to Gruber that sweet potatoes and sweet potato by-products were fit as feed for livestock. The complaint alleged causes of action against all defendants for negligent misrepresentation, strict liability, Breach of implied warranty and breach of warranty. The jury returned a verdict for Gruber for $14,700 actual damages. Gruber and Santee appeal. We affirm.

## ISSUE

Gruber's Appeal. The issues of merit presented by Gruber are (1) whether the trial judge erred by overruling Gruber's post-verdict motion for a new trial *nisi additur*, or in the alternative for a new trial absolute, and (2) whether the trial judge erred in changing the jury that Santee would not be liable if the parties had equal access to the facts even if there were a misrepresentation on the parts of Weber.

Santee's Appeal. The only issues of merit presented by Santee are whether the trial judge erred in overruling Santee's motion for a directed verdict on the grounds that (1) as a matter of law, Gruber was contributorily negligent and (2) as a matter of law Gruber assumed the risk of feeding sweet potatoes and sweet potato by-products to his cattle.

## FACTS

Gruber is a cattle farmer who is in the breeding business. He breeds F-1 and limousin (a more expensive cow) cattle.

This case began in December 1986 when Gruber went to Santee's sweet potato processing plant in Holly Hill and struck up a conversation with Weber about whether the plant's by-products could be used as cattle feed. Weber owned both Santee and Weber Produce. Weber produce graded and cured sweet potatoes for market. It transferred otherwise unmarketable potatoes to Santee, which it then used to prepare frozen foods. Santee had experienced problems disposing of the by-products because the Department of Health and Environmental Control (DHEC) refused to allow disposal into the sewerage. Santee paid for disposal for a while and briefly allowed another farmer to get the by-products.

Weber gave Gruber a tour around his plant and explained how the skins were taken off of the potatoes. The potatoes were steamed and then put on a conveyer belt with rubber ridges that removed the skins. Gruber asked Weber if the by-products would be fit to use as a feed for cattle. Weber told Gruber that they were good for cattle.

It is undisputed that Santee proposed a written contract which provided in pertinent parts:

> 1. Santee desired to obtain Gruber's services for sweet potato waste collection and transportation from business;

2. Gruber desired to provide collection and transportation services in return for obtaining all of Santee's potato waste;

3. Gruber agreed to pay $1.00 for each 40,000 pound load;

4. The contract would become void if Santee changed its process so that the by-products became harmful for livestock to consume;

5. Santee assumed no responsibility for any damages incurred by anyone using or associated with the by-products after they left the plant.

The agreement was sent to Gruber, but Gruber did not sign the contract because he was worried about the volume the contract required to be removed from the Santee Plant. Except for that, Gruber testified that he was willing to sign it.

Gruber's testimony is that he did buy the by-products and that "no money changed hands." His testimony is that he provided a service to Santee by removing the by-products, and in return Santee was able to get the by-products removed and disposed.

During 1987, Gruber removed the potato by-products and fed them to his cows. He said the cows liked the by-products.

Early in 1988 while at Santee's plant, Gruber observed a dump truck full of potatoes. He asked if he could have the potatoes and was authorized to drive the truck to his farm, dump the potatoes and return the dump truck to Santee's premises. He just simply dumped the potatoes in his field along with some by-potatoes. A few days later, he found five of his cows dead. Over the next three to four days a total of forty cows died. A veterinarian testified that the cows died from sweet potato poisoning which occurs when potatoes mold. Gruber testified that this was the first time he had heard that sweet potatoes could be harmful to cows. He had no idea when the potatoes began to mold. He said he had never had any problem with whole potatoes or the by-products prior to January 1988. In fact he and some of his neighbors had eaten some of the sweet potatoes.

Gruber's veterinarian testified that she had examined Gruber's cows. She saw the potatoes and stated that she thought they were not rotten. Lab reports confirmed that the cows died from sweet potato poisoning. The mold that causes the

poisoning is microscopic, and cannot be seen, tasted or smelled. The veterinarian testified that she would not feed sweet potatoes to cattle.

Gruber valued his limousin cattle at $1,250 apiece without calf and stated that the forty-nine surviving cattle had suffered residual damage in the amount of $20,433. Gruber also testified that the seven F-1 cows which died had a value of $900 each and that there was $8,400 in residual damages to his remaining F-1 cows.

The trial judge directed a verdict for Weber individually and Weber Produce as to all claims against them. The judge directed a verdict for Santee on Gruber's claims for breach of warranty and strict liability. The trial judge denied Santee's motion for directed verdict as to Gruber's negligent misrepresentation and also Gruber's motion for directed verdict. The only issue that went to the jury was the negligent misrepresentation claim against Santee.

## DISCUSSION

### Gruber's Appeal

### I.

We reject Gruber's contention that the trial judge erred in not granting a new trial *nisi additur*. When a party seeks a new trial based upon the amount of the jury verdict, the trial court and appellate courts are guided by certain principles. When the question on appeal is whether the trial judge erred in denying a motion for a new trial *nisi*, a reviewing court will not interfere with the amount of a verdict unless the verdict is either so grossly excessive or inadequate that it must be deemed the result of the jury's disregard of the facts and the court's instructions. *Craven v. Cunningham*, 292 S.C. 441, 357 S.E. (2d) 23 (1987). The order granting a new trial *nisi additur* must contain compelling reasons in accord with this rule. *Williams v. Robertson Gilchrist Constr. Co.*, 301 S.C. 153, 390 S.E. (2d) 483 (Ct. App. 1990).

While the evidence of this case could certainly have supported a much larger verdict, we cannot say as a matter of law that the verdict of the jury in this case was grossly inadequate and resulted from the jury's disregard of the facts or the trial judge's instructions.

If a verdict is excessive in the sense that it may be considered unduly liberal, the trial judge alone has the power and responsibility to set aside the verdict absolutely or reduce it by granting a new trial *nisi remittitur*. On the other hand, if the verdict is inadequate in the sense that it may be considered unduly conservative, the trial judge alone has the power and responsibility to set aside the verdict absolutely or increase it by granting a new trial *nisi additur*. Under the facts of this case, we hold that the trial judge alone had the power and authority to either grant or overrule Gruber's motion for a new trial *nisi additur*. Accordingly, we reject this contention.

## II.

The trial judge charged the jury in pertinent part:

Now, the facts, the law says, are equally within the law because of the observation of both parties. If both parties were equally—the same access to the same facts, then the law says the facts that one made a false statement, a careless false statement, that, then, doesn't mean that that person is gonna be held responsible if that statement is false. So, then, if both have equal access to the facts, then the Defendant isn't liable, even if the statement isn't true; because, of course, then the Plaintiff doesn't have any right to rely on that Defendant. If both have the same access to the facts, then they don't have any right to rely on that, on that other, other person.

Gruber's counsel objected. The trial judge overruled the objection saying, "Well, I took that particular instruction just almost verbatim from the 65 C.J.S. *Negligence*, Section 20 which was cited with approval in this . . . at 339 S.E. (2d) 146 and I think that adequately covers it." The trial judge was talking about *Winburn v. Insurance Co. of North America*, 287 S.C. 435, 339 S.E. (2d) 142 (Ct. App. 1985).

On appeal Santee argues that a correct statement of the law would be that the defendant would not be liable where the misrepresentation was about facts that were equally within the observation of the parties. We hold this is not the law and accordingly reject this contention.

The question is whether the trial judge in the above quoted instruction misstated the law of reliance in negligent misrepresentation cases. We find no clear authority defining the law relating to reliance in these cases. The law of negligent misrepresentation arises out of the relationship of the parties. It is an emerging and developing field of law. What we do know about the law of reliance in these cases is that the plaintiff must not only rely upon the negligently made misrepresentation but his reliance must be justifiable under the circumstances. *See* 37 Am. Jur. (2d) *Fraud and Deceit* § 209 (1968).

Recovery in negligent misrepresentation cases is based upon negligent conduct and predicated upon a negligently made false statement where a party suffers either injury or loss as a consequence of relying upon the misrepresentation. *Winburn v. Insurance Co. of North America, supra.* It is not a fraud and deceit action; it is a negligence action and one of the essential elements of the action is reliance. We hold that reliance can only be justified in these cases if the relationship of the parties is such that the defendant occupies a superior position to the plaintiff with respect to knowledge of the truth of the statement made.

On the other hand, there can be no reasonable reliance on a misstatement if the plaintiff knows the truth of the matter. Accordingly, we hold that the trial judge properly instructed the jury that if both Gruber and Santee had equal access to the fact that the potatoes were harmful to cattle, then Gruber had no cause of action.

## SANTEE'S APPEAL

We hold that the trial judge did not err in refusing to hold as a matter of law that Gruber was contributorily negligent.

The doctrine of contributory negligence[1] was applicable in this State at the time of the events of this case and at the time of the trial. Contributory negligence, when applicable, is a lack of ordinary care on the part of a person injured by the negligence of another which combines and concurs with the other's negligence and contributes to the injury

---

[1] Contributory negligence has been abolished in favor of comparative negligence for cases filed on or after July 1, 1991. *See Nelson v. Concrete Supply Co.,* 303 S.C. 243, 399 S.E. (2d) 783 (1991).

as a proximate cause without which the injury would not have occurred. The doctrine of contributory negligence embodies the principle that an injured person should not be permitted to ask from others greater care than he himself exercises for his own welfare. If in the exercise of ordinary care, the plaintiff might have avoided the consequences of the 'defendant's negligence, he is the author of his own injury in the eyes of the law. *Wallace v. Owens-Illinois, Inc.*, 300 S.C. 518, 389 S.E. (2d) 155 (Ct. App. 1989). Generally, contributory negligence is a question for determination by the jury. But when the evidence admits only one reasonable inference, it becomes a matter of law for the determination of the court. If the plaintiff has knowledge of a dangerous situation or condition and voluntarily steps into that dangerous situation, he is as a matter of law contributorily negligent.

Under the circumstances of this case, we hold that Item Four of the contract prepared by Santee is evidence from which the jury might have drawn an inference that potato peelings removed by steam were safe for cattle consumption. There is no evidence of record that Gruber had access to any information contrary to this implication. We accordingly, reject the contention that as a matter of law, Gruber was contributorily negligent. And, of course, the jury in its own rightful and lawful mystique might have applied the doctrine of comparative negligence before its birth in this state.

As to Santee's contention that Gruber assumed the risk of damaging his cows by feeding them the potatoes and the by-products of potatoes, the trial judge did not instruct the jury on assumption of risk. Santee took no exception to the trial judge's failure to so instruct the jury, therefore Santee's question presenting assumption of risk is without merit.

We find no merit to the other questions presented by this appeal. We hold the trial judge adequately instructed the jury on negligent misrepresentation and committed no error in the rulings on the other motions made.

## CONCLUSION

For the above reasons, we hold that the arguments of both Santee and Gruber are without merit, and accordingly, affirm the verdict rendered and judgment entered on this case.

Affirmed.

SHAW, J., and BRUCE LITTLEJOHN, Acting Associate Judge, concur.

