2494

Samuel B. HARRINGTON, III, Appellant v. Earl B. MIKELL, Jr., C.F. Carter, and Coldwell Banker Jenkins & Gallup Realtors, of whom C.F. Carter and Coldwell Banker Jenkins & Gallup Realtors are Respondents.

(469 S.E. (2d) 627)

Court of Appeals

*William Frederick Austin* and *Richard Lee Whitt,* both of *The Austin Law Firm,* Columbia, *for appellant.*

*Theodore Von Keller,* of *Berry, Adams, Quackenbush & Dunbar,* Columbia, *for respondents.*

Heard Mar. 8, 1996.

Decided Apr. 15, 1996.

HEARN, Judge:

Appellant, Samuel B. Harrington, III, brought this action against Respondents, C.F. Carter and Coldwell Banker Jenkins & Gallup Realtors, alleging negligent misrepresentation and professional negligence related to the attempted sale of a house. Harrington appeals the circuit court's order granting summary judgment in favor of Respondents. We affirm.

In March of 1993, Earl B. Mikell, Jr. on behalf of his mother, Alliene Mikell, requested Respondents list his mother's house for sale. The agency disclosure form signed by Mikell and C.F. Carter, the real estate licensee, stated Respondents would attempt to locate a buyer for the property and would act as a listing agent of the seller, Mikell. Harrington became aware of the property from the multiple listing directory, which showed the listing agents to be Respondents. On August 2, 1993, Harrington submitted an offer to purchase the property. On August 5, 1993, the offer was accepted by Mikell who signed as seller, adding next to his name, "ATTORNEY IN FACT." The contract of sale provided for a closing date on or before September 30, 1993.

In a letter dated September 2, 1993, Mikell's attorney wrote to Harrington's real estate agent informing her that Mikell had "signed the contract believing he had a power of attorney from his mother, Alliene Mikell." The letter stated, "[s]ubsequent to the signing of the contract, Mikell discovered that he did not have a power of attorney." The letter noted Alliene Mikell was residing in a nursing home and "[was] not capable of managing her own affairs." The letter further stated "the funds derived from the sale would have to be paid to the governmental agency presently paying the bills in connection

with Mrs. Mikell's stay at the Brian Center" and, therefore, "Mr. Mikell, as conservator, [could] not follow through with actions contemplated by the contract in as much as such action would not be in the best interests of Mrs. Mikell's estate." Subsequently, Mikell repudiated the sale.

Harrington brought this action against Mikell, Coldwell Banker Jenkins & Gallup Realtors and C.F. Carter, alleging negligent misrepresentation and professional negligence against C.F. Carter and Coldwell Banker Jenkins & Gallup Realtors. Respondents moved for summary judgment on the following grounds: (1) Harrington had equal access to the information regarding the power of attorney, and (2) Respondents were the agent of Mikell and had no fiduciary duty to Harrington. At the hearing for the motion for summary judgment, Harrington abandoned his cause of action for professional negligence. The trial judge granted Respondents' motion for summary judgment on the negligent misrepresentation claim on two grounds: first, the trial judge found as a matter of law that Harrington failed to show Carter and Coldwell had a duty to substantiate the representation of Mikell; second, Harrington failed to show reasonable or justifiable reliance upon the representation. Harrington appeals.

Summary judgment is appropriate when it is clear there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Cafe Associates Ltd. v. Gerngross*, 305 S.C. 6, 406 S.E. (2d) 162 (1991). In ruling on a motion for summary judgment, the evidence and the inferences which can be drawn therefrom should be viewed in the light most favorable to the nonmoving party. *Id.*

On appeal, Harrington contends the trial judge erred in granting summary judgment. The threshold issue in this case is Harrington's assertion the trial judge erred by ruling Respondents had no duty in giving information to Harrington when there was undisputed evidence of Respondents' pecuniary interest in the outcome of the transaction.

One may bring a common-law action in tort for negligent misrepresentation. *Gilliland v. Elmwood Properties*, 301 S.C. 295, 391 S.E. (2d) 577 (1990); *Winburn v. Insurance Co. of North America*, 287 S.C. 435, 339 S.E. (2d) 142 (Ct. App. 1985). If the damage alleged is a pecuniary loss, the plaintiff

must allege and prove the following essential elements to establish liability for negligent misrepresentation: (1) the defendant made a false representation to the plaintiff; (2) the defendant had a pecuniary interest in making the statement; (3) the defendant owed a duty of care to see that he communicated truthful information to the plaintiff; (4) the defendant breached that duty by failing to exercise due care; (5) the plaintiff justifiably relied on the representation; and (6) the plaintiff suffered a pecuniary loss as the proximate result of his reliance upon this representation. *AMA Management Corp. v. Strasburger*, 309 S.C. 213, 420 S.E. (2d) 868 (Ct. App. 1992). As part of his case, the plaintiff must show that his reliance on the misrepresentation was reasonable. *Id.* at 223, 420 S.E. (2d) at 874. "There is no liability for casual statements, representations as to matters of law, or matters which plaintiff could ascertain on his own in the exercise of due diligence." *Id.* Reliance can be justified only if the relationship of the parties is such that the defendant occupies a superior position to the plaintiff with respect to knowledge of the truth of the statement made. *O.C. Gruber v. Santee Frozen Foods, Inc.*, 309 S.C. 13, 419 S.E. (2d) 795 (Ct. App. 1992). However, there can be no reasonable reliance on a misstatement if the plaintiff knows the truth of the matter. *Id.* at 20, 419 S.E. (2d) at 800.

In this case, the agency disclosure form explicitly established an agency relationship between Respondents and Mikell. Respondents were the agent of the seller and not Harrington, the buyer. Counsel for Harrington concedes this fact. As such, a fiduciary relationship did not exist between Harrington and Respondents. *See Lengel v. Tom Jenkins Realty, Inc.*, 286 S.C. 515, 518, 334 S.E. (2d) 834, 836, n. 1 (Ct. App. 1985).

Harrington argues, however, that Respondents had a duty to verify the information concerning the power of attorney because Respondents had a pecuniary interest in the transaction and were in a superior position. Harrington cites *Winburn v. Insurance Co. of North America*, 287 S.C. 435, 441, 339 S.E. (2d) 142, 146, in which this Court stated, "[a] duty to exercise reasonable care in giving information exists when the defendant has pecuniary interest in the transaction." Harrington also argues that when one undertakes to furnish information they owe a duty not to mislead the recipient.

In *Strasburger*, this court found "if the defendant has a pecuniary interest in making the statement and he possesses expertise or special knowledge that would ordinarily make it reasonable for another to rely on his judgment or ability to make careful enquiry, the law places on him a duty of care with respect to representations made to plaintiff." *Strasburger*, 309 S.C. at 223, 420 S.E. (2d) at 874. "The duty of care is not a duty to take every possible care, still less is it a duty to be right; it is the familiar duty to exercise that care a reasonable man would take in the circumstances." *Id.*

Generally, a broker has a duty to avoid fraudulent conduct and misrepresentation. 12 C.J.S. *Brokers* § 58 (1980). Harrington presented no evidence to indicate the Respondents knew Mikell did not actually have a power of attorney. The only evidence offered on this point is Harrington's affidavit which states:

> 11. Defendants Carter and Coldwell had knowledge of the fact that Defendant Mikell was selling the Overbrook property pursuant to a power of attorney, prior to my signing of the contract, but did not disclose the same to me.

This statement does not support the proposition that Respondents knew of the falsity of the information. On Respondents' agency disclosure form, Mikell signed his name for his mother, who resided in a nursing home. The letter of Mikell's attorney denying Mikell's power of attorney is dated September 2, 1993, nearly a month after the contract of sale was signed by both parties.

Respondents did have a duty not to defraud Harrington.[1]

---

[1] Harrington asserts the trial judge improperly based his order granting summary judgment on agency principles inapplicable to a negligence action. In its order, the trial court, citing The Restatement (Second) of Agency § 348(b) (1957), wrote "an agent who repeats a fraudulent misrepresentation of his principal is not liable unless he knows or should know that it was a misrepresentation, and that an agent can properly rely on the statements of its principal to the same extent as statements from any other reliable source." After this citation, the trial judge concluded Harrington failed to establish a duty on behalf of Respondents because Harrington had not produced evidence to show Respondents were aware the admitted representations of Mikell were false. Although this is a case of negligent misrepresentation, the trial judge's reliance on fraudulent misrepresentation was not misplaced. The trial judge relied on these principles as an additional ground to find Respondents owed no duty to Harrington. We find no error in the trial judge's analysis.

However, we decline to find Respondents had a general duty to verify the information concerning the power of attorney. It is readily apparent that Respondents acted as a mere conduit through which Mikell relayed information concerning his possession of a power of attorney. Absent evidence of bad faith on the part of Respondents, we hold they cannot be held liable on principles of negligence. *See Miller v. Sexton,* 549 So. (2d) 10 (Ala. 1989).

In additional arguments, Harrington asserts the trial judge improperly ruled on and decided contested issues of material fact. The above analysis is dispositive of these arguments. Viewing the evidence in the light most favorable to Harrington, we conclude there was no genuine issue of material fact and Respondents were entitled to judgment as a matter of law. Respondents owed no duty to Harrington to verify Mikell's power of attorney. Although the issue of reliance is generally a question of fact for the jury, we agree with the trial court there was no evidence to conclude Harrington's reliance was justifiable in that Harrington could have ascertained the information and Respondents were not Harrington's agent. *See Epstein v. Howell,* 308 S.C. 528, 530, 419 S.E. (2d) 379, 381 (Ct. App. 1992) ("issues of reliance and its reasonableness, going as they do to subjective states of mind and applications of objective standards of reasonableness, are preeminently factual issues for the triers of the facts"). The trial judge was correct in granting the Respondents' motion for summary judgment.

Accordingly, the order of the trial judge is

Affirmed.

GOOLSBY and CONNOR, JJ., concur.