**HIT PRODUCTS CORPORATION,**
**Plaintiff,**

v.

**ANCHOR FINANCIAL CORPO-**
**RATION d/b/a/ the Anchor**
**Bank, Defendant.**

**No. Civ.A. 4–97–3799–22.**

United States District Court,
D. South Carolina,
Florence Division.

Oct. 8, 1999.

Gray Thomas Culbreath, Collins and Lacy, Columbia, SC, Joey McCue, Collins and Lacy, Columbia, SC, for Hit Products Corporation, plaintiff.

Howell V. Bellamy, Jr., Douglas M Zayicek, Bellamy Rutenburg Copeland Epps Gravely and Bowers PA, Myrtle Beach, SC, for Anchor Financial Corporation, defendant.

### ORDER

CURRIE, District Judge.

This action arises out of a letter written by Defendant Anchor Bank (hereinafter "Bank") stating that SISCO USA, SISCO Middle East Limited, BIN Mahfooz Trading Co., Gary Jewel, and John Nelson (hereinafter "the SISCO Entities"), were in good financial condition and were long-standing customers. Plaintiff complains that Defendant Bank, a federally insured financial institution, negligently misrepresented the financial situation of these companies and individuals and the relationship between Defendant Bank and these companies and individuals. Plaintiff alleges

that it suffered pecuniary losses as a result of its reliance on Defendant Bank's letter. Jurisdiction is based on diversity of citizenship pursuant to 28 U.S.C. § 1332. The matter is before the court on Defendant Bank's Motion for Summary Judgment.[1]

The court has reviewed the complete record, including the briefs and exhibits filed in support of and in response to the motion, the pleadings, depositions, party interrogatories and answers to local court interrogatories. The court finds that Defendant Bank's Motion for Summary Judgment should be granted.

## I. FACTUAL AND PROCEDURAL HISTORY

The following background is drawn from the complete record before the court. As to certain matters, the parties present differing accounts of events. Although this order attempts to present both accounts, the court, in ruling on Defendant Bank's motion, must draw all inferences in Plaintiff's favor.

In 1992, Paul Cordua, Bill Vogt, and George Cook (all associated with Plaintiff Hit Products) entered into a Joint Venture with John C. Nelson and Gary Jewel (both associated with SISCO U.S.A.). According to the BGGJP Joint Venture Agreement (hereinafter "the Agreement"), the purpose of the Joint Venture was to build plastic molds which would be used to manufacture PVC fittings used in irrigation systems. The Agreement called for a contract under which Joint Venture would supply SISCO U.S.A. with fittings made from these plastic molds. The Agreement also called for a contract between Joint Venture and Plaintiff under which the fittings would be manufactured from the molds. In summary, Plaintiff was to be responsible for obtaining industry approvals, management of manufacturing, invoicing, shipping, and maintenance of the molds and machinery. SISCO U.S.A. was to be responsible for the marketing and sale of the fittings.

The written contracts never materialized. Plaintiff eventually entered into a business agreement with Nelson, Jewel, Payne, and SISCO U.S.A. to manufacture "PVC Fittings" for sale in the Middle East (Pl.Mem. in Opp'n at 2). The SISCO Entities would place an order with Plaintiff, who would then manufacture and deliver the products to the SISCO Entities' agents for shipment overseas (Compl. at 3). Plaintiff would then bill SISCO U.S.A., who maintained an account with Plaintiff and paid on an account basis (Id.). This agreement was reached in 1992, after many years of a cooperative business relationship between Plaintiff and SISCO U.S.A. (Dep. of Paul Cordua, Nov. 1998, at 107). Plaintiff claims that the Joint Venture was merely a plan to divide royalties from these sales and has nothing to do with the payment of SISCO U.S.A.'s debt to Plaintiff (Aff. of Paul Cordua, Pl.Ex. A, at 2).

SISCO U.S.A. allowed their account with Plaintiff to grow to a large amount, totaling $1,123,771.25 on March 25, 1994 (Letter from Hit Products to SISCO U.S.A., March 28, 1994, Def.Ex. 4). The last shipment of fittings Plaintiff sent to SISCO U.S.A. was on February 6, 1997 (Compl. at 3). The last payment received by Plaintiff was on March 13, 1997 (Id.). This payment totaled $32,248.00, and reduced the outstanding account balance of

---

1. Originally, Plaintiff's claim also included causes of action against John C. Nelson, Gary Jewel, Cathy Payne, Jack Tilgham, SISCO U.S.A., and SISCO U.S.A., Inc. However, summary judgment was granted in favor of Defendant Tilgham on March 17, 1999. In addition, Plaintiff and Defendants Nelson, Jewel, Payne, SISCO U.S.A., and SISCO U.S.A., Inc. reached a settlement agreement.

An order was entered on May 10, 1999, dismissing the action after 120 days unless settlement was not consummated. An extension of 10 days was granted by order dated September 4, 1999. At least 130 days have passed and, accordingly, Plaintiff's claims against these Defendants have been dismissed.

SISCO U.S.A. to approximately $1.7 million (Id.). Since then, SISCO U.S.A. has failed to make any further payments and allegedly owes Plaintiff at least $1.7 million (Id.).

In 1995, Plaintiff considered insuring its accounts receivable from SISCO U.S.A. with the Export–Import Bank (Aff. of Paul Cordua, Pl.Ex. C, at 2). In addition, Plaintiff's bank, the Bank of Sierra, became concerned about the payment of the debts incurred by SISCO U.S.A. (Id.). As a result of both of these considerations, Plaintiff requested financial information concerning the SISCO Entities (Id.). In the fall of 1995, Plaintiff received a personal financial statement from John Nelson, the President of SISCO, U.S.A. (Id. at 3).

The Bank of Sierra requested that Plaintiff obtain a letter of reference concerning the SISCO Entities from Defendant Bank. (Dep. of Paul Cordua, Nov. 1998, at 144–45). Plaintiff then asked Mr. Nelson to provide a letter of reference from the SISCO Entities' bank, Defendant Bank, concerning the SISCO Entities' financial position (Id. at 145–46). Plaintiff, acting through its President, Paul M. Cordua, provided Mr. Nelson with a form letter, and requested that he have Defendant Bank fill out the relevant portions (Id.). On January 15, 1996, Plaintiff received a fax from the SISCO Entities which transmitted a letter from Defendant Bank's Executive Vice President and Chief Credit Officer, Robert R. Durant III (Compl. at 4). This letter, dated January 11, 1996, contained the following comments describing the SISCO Entities:

"1. The above listed companies and people have been in an excellent working relationship with our company for ten (10) years. Length of personal relationship with the principals of company ten (10). They are well respected in the industry and have combined eighteen (18) years of experience and background to utilize.

2. They have maintained balances ranging from $25,000 to $350,000, always paying prompt and as agreed.

3. Standing in the community is excellent.

4. Business ethics are considered good.

5. They are economically stable having no adverse credit history. Cash flow is sufficient for operation of all business entities.

    *    *    *    *    *    *"

The actual letter is a completed version of the form letter Mr. Cordua provided to Mr. Nelson (See letter from Paul Cordua to John Nelson, Def.Ex. 7). The original form letter contained the names of the SISCO Entities and was addressed "To Whom it May Concern" (Id.). John Nelson states in his affidavit that the purpose of this letter was to assist Plaintiff in securing credit from a "bank in California," presumably the Bank of Sierra (Aff. of John Nelson, June 24, 1999, at 1). Defendant Bank alleges that the letter was intended to be relied upon only by the bank from which Plaintiff was seeking credit, not Plaintiff itself (Id. at 1–2).

Defendant Bank disputes Plaintiff's version of the business arrangement. Defendant Bank claims that the only contractual relationships at issue in this dispute are between Plaintiff and Joint Venture, and Joint Venture and SISCO U.S.A. (Def. Reply to Pl.Memo. in Opp'n at 2). Defendant Bank states that it was Plaintiff's duty under the Agreement to collect from SISCO U.S.A. money due to Joint Venture, take out money owed to Plaintiff, and distribute the remainder to Joint Venture as royalties (Def.Mot. For Summ.J. at 3–4). Defendant Bank claims Plaintiff may only look to Joint Venture for collection of the debt, as opposed to the SISCO Entities (Id. at 3). In addition, Defendant Bank states that Plaintiff's invoices only name SISCO U.S.A. as a matter of convenience, and that only Joint Venture assumed responsibility to pay Plaintiff's invoices (Id. at 4). As a result, Defendant Bank claims that any misrepresentations it may have

made about the SISCO Entities are immaterial because Plaintiff could only collect from Joint Venture (Def. Reply to Pl. Memo. in Opp'n at 2).

Plaintiff complains that Defendant Bank negligently misrepresented in the January letter that the SISCO Entities were in a better financial position than was accurate (Pl.Memo. in Opp'n at 3–5). Plaintiff claims to have suffered a pecuniary loss because of its reliance on these misrepresentations (Compl. at 15). Plaintiff claims that it continued to ship fittings and other products to SISCO U.S.A. based on the representation that it had sufficient cash flow to satisfy their business operations (Id.). Plaintiff claims that this caused it to divert capital in the form of labor, materials, and monies to the production of fittings (Id.). Plaintiff also claims that the letter caused it to delay initiating a collection action against SISCO U.S.A. (Pl. Memo. in Opp'n at 5) and that it did not move into other markets as a result of its commitment of resources to SISCO U.S.A. (Compl. at 15).

Plaintiff commenced an action against the SISCO Entities on December 5, 1997. Defendant Bank was joined as a defendant on June 2, 1998. Plaintiff's most recent complaint asserts a claim for negligent misrepresentation by Defendant Bank. Defendant Bank filed an answer on August 19, 1998, in which it denies the material allegations of Plaintiff's complaint. Defendant Bank filed a Motion for Summary Judgment on May 24, 1999. Plaintiff responded with a Memorandum in Opposition to the Motion on June 7, 1999, and Defendant Bank filed a Reply Memorandum on June 16, 1999.

## II. SUMMARY JUDGMENT STANDARD

In deciding a summary judgment motion, the court must look beyond the pleadings and determine whether there is a genuine need for trial. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–53, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the defendant carries its burden of showing there is an absence of evidence to support a claim, then the plaintiff must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). An issue of fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the plaintiff. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. An issue of fact concerns "material" facts only if establishment of the fact might affect the outcome of the lawsuit *under* governing substantive law. *Id.* A complete failure of proof concerning an essential element of the plaintiff's case necessarily renders all other facts immaterial. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548. Moreover, production of a "mere scintilla of evidence" in support of an essential element will not forestall summary judgment. *Anderson,* 477 U.S. at 251, 106 S.Ct. 2505.

## III. ANALYSIS

This being a diversity action, the law of the forum state applies. In South Carolina, the essential elements of a negligent misrepresentation claim are:

"(1) [T]he defendant made a false representation to the plaintiff; (2) the defendant has a pecuniary interest in making the statement; (3) the defendant owed a duty of care to see that he communicated truthful information to the plaintiff; (4) the defendant breached that duty by failing to exercise due care; (5) the plaintiff justifiably relied on the representation; and (6) the plaintiff suffered a

pecuniary loss as the proximate result of his reliance upon the representation." *Harrington v. Mikell,* 321 S.C. 518, 469 S.E.2d 627, 629 (S.C.Ct.App.1996). Defendant Bank contends that as a matter of law Plaintiff has failed to prove five essential elements of the negligent misrepresentation claim: (1) the existence of material misrepresentations in the January 11, 1996, letter; (2) the existence of a duty to communicate truthful information to Plaintiff; (3) the breach of any existing duty; (4) Plaintiff's justifiable reliance on the letter; and (5) the letter being a proximate cause of Plaintiff's pecuniary loss. Because the court concludes that Plaintiff is unable to show justifiable reliance on any of the alleged misrepresentations, summary judgment for Defendant Bank is appropriate.[2]

Plaintiff contends that Defendant Bank made three specific false representations: (1) that Defendant Bank had a business relationship with BIN Mahfooz and SISCO Middle East, (2) that Defendant Bank had a business relationship with the persons and companies listed on the letter for ten years, and (3) that the Entities referenced in the letter had sufficient cash flow when Defendant Bank had no knowledge of this information (Compl. at 14). Defendant Bank responds that any reliance on these misrepresentations was not justified because (1) Plaintiff knew the SISCO Entities better than Defendant Bank, (2) Plaintiff did no further investigation of the SISCO Entities before relying on the letter, and (3) any misrepresentations about BIN Mahfooz or SISCO Middle East were not material to Plaintiff's reliance. Plaintiff responds that its reliance was justified because of its relationship and experience with banks in the past (Pl.Memo. in Opp'n at 19–24). Plaintiff states that it did not conduct any further investigation because it assumed Defendant Bank would be dili-gent in its search for information to support its representations (Id.).

Defendant Bank argues that reliance cannot be justified because Plaintiff was actually in a superior position as to the alleged misrepresented information. Courts will find reliance justifiable in a negligent misrepresentation claim "only if the relationship of the parties is such that the defendant occupies a superior position to the plaintiff with respect to knowledge of the truth of the statement made." *Harrington,* 469 S.E.2d at 629 (*citing O.C. Gruber v. Santee Frozen Foods, Inc.,* 309 S.C. 13, 419 S.E.2d 795, 799–800 (S.C.Ct. App.1992)). Reliance is not reasonable if the plaintiff knows the truth of the matter misrepresented. *Id.*

Defendant Bank cannot be said to stand in a superior position to Plaintiff with respect to the misrepresentations in the letter. Plaintiff had been doing business with the SISCO Entities in one form or another since 1986 (Dep. of Paul Cordua, Nov. 1998, at 107). In addition, the President of Plaintiff worked closely with the principals of the SISCO Entities, even entering into a Joint Venture with them in 1992 (BGGJP Joint Venture Agreement, Def.Ex. 1). Plaintiff has admitted that SISCO U.S.A. owed it over a million dollars at the time it received Defendant Bank's letter (Letter from Hit Products to SISCO U.S.A., March 28, 1994, Def.Ex. 4), well above the amount that the letter stated was on deposit with Defendant Bank. Plaintiff has also admitted that this debt was not reported to a collection agency or to Defendant Bank (Dep. of Paul Cordua, Oct. 1998, at 260–61). As such, Defendant Bank did not have access to information regarding this large debt. Plaintiff is an experienced company with knowledge of business transactions of this sort. It was aware since 1994 that SISCO U.S.A. owed it a large amount of money and that this

---

**2.** As to the other elements of the negligent misrepresentation claim: whether false representations were made, whether Defendant Bank owed Plaintiff a duty, whether there was a breach of this duty, and whether the false representations were the proximate cause of Plaintiff's pecuniary loss, there are disputed issues of material facts.

would affect SISCO U.S.A.'s cash flow. Thus, viewing the evidence in the light most favorable to Plaintiff, its relationship with the SISCO Entities and knowledge of the large accounts payable prevent Plaintiff from demonstrating, as a matter of law, that Defendant Bank occupied a superior position as to knowledge of the truth of the statements contained in the letter.

Defendant Bank also contends that reliance was not justified because Plaintiff knew the truth of the matters allegedly misrepresented. Plaintiff knew of SISCO U.S.A.'s outstanding obligations to it (Letter from Hit Products to SISCO U.S.A., March 28, 1994, Def.Ex. 4), and that it was impossible for Defendant Bank to have had a working relationship with some of the companies listed in the letter for as long as the letter represented (Dep. of Paul Cordua, Nov. 1998, at 162–64). Plaintiff never addresses the fact that it was aware of discrepancies in the letter or the fact that the SISCO Entities owed it a large sum of money. The letter contained enough information contrary to what Plaintiff knew to be true to cause a reasonable business person to doubt the reliability of the letter and request further information. The court finds that because Plaintiff knew of the discrepancies it now complains of, Plaintiff was not justified in relying on this letter without further investigation to protect its own interests.

Defendant Bank further argues that any reliance on the false representations about BIN Mahfooz or SISCO Middle East was not justified because Plaintiff never expected or sought payment from either of these entities (Def. Reply to Pl.Memo. in Opp'n at 4–5). Plaintiff was aware that these companies had not existed for ten years when the letter was received and could not possibly have been involved with Defendant Bank for that long (Dep. of Paul Cordua, Nov. 1998, at 162–64). In addition, Plaintiff never looked to either of these entities for collection of SISCO U.S.A.'s debt, never extended them credit, and never had a business relationship with either of them (Id. at 140). Plaintiff argues that it was important that each of the SISCO Entities be in stable financial condition because the money SISCO U.S.A. owed it would flow through the subsidiaries of SISCO U.S.A (Pl.Memo. in Opp'n at 9). However, the court finds that the representations in the letter regarding these two entities could not have been material to Plaintiff's determination of whether to continue its business relationship with SISCO U.S.A. as it never looked to these entities for payment. Therefore, Plaintiff was not justified in relying on these immaterial representations.

In light of these facts, Plaintiff cannot establish that its reliance on the claimed misrepresentations was justified. Consequently, the court finds that Defendant Bank is entitled to summary judgment.

## V. CONCLUSION

IT IS THEREFORE ORDERED that Defendant Bank's Motion for Summary Judgment is GRANTED and the Clerk is ordered to enter judgment for Defendant Bank.

IT IS SO ORDERED.