THIS OPINION HAS NO PRECEDENTIAL VALUE

THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Hattie O. Gordon, Appellant,
 
 
 

v.

 
 
 
 William R. Tillman, Dan L. Tillman & Sons, Inc. Respondent.
 
 
 

Appeal From Chesterfield County
 Brooks P. Goldsmith, Circuit Court Judge

Unpublished Opinion No. 2006-UP-424
Submitted November 1, 2006  Filed December 19, 2006  

AFFIRMED

 
 
 
 Marvin P. Jackson, of Florence, for Appellant.
 John S. Wilkerson and M. Scott Taylor, both of Florence, for Respondent.
 
 
 

PER CURIAM:  The trial court granted William R. Tillman, Dan L. Tillman & Sons Inc.s (collectively Tillman) motion for a directed verdict on Hattie Gordons (Gordon) cause of action for fraud and deceit in connection with the sale and purchase of Gordons home.  The trial court also excluded Gordons testimony relating to rent she paid after vacating her home.  Gordon now appeals the trial courts rulings.  We affirm.
FACTS
In March 2002, approximately one year after moving to Wallace, South Carolina, Gordon decided to purchase a house.  She contacted three real estate agents, but only Tillman had an available listing in the area.  After looking at the house on her own, Gordon met Tillman at the house to conduct a formal walk-through. 
Gordon testified that during the walk-through, she told Tillman she wanted the home inspected but admitted that she did not explicitly request a formal inspection from Tillman.  In response to her statements at the walk-through, Gordon testified Tillman told her a house inspection was part of the loan process and was a prerequisite to close the loan.  Further, Gordon said Tillman told her the house was a fine home, and nothing was wrong with the house.  Despite Gordons testimony, a written phone message indicated that Gordon called Tillmans office after the walk-through to request a key because she ha[d] someone to do a home inspection.  
On March 22, 2002, Gordon placed an offer on the house.  Before closing, Tillman told Gordon he was exclusively the sellers agent and presented Gordon with a form entitled Acknowledgement of Relationship Disclosure, which she signed.  The disclosure stated she understood the terms and agreed to be self-represented, and at no time would Tillman act as a dual agent between Gordon and the seller.   
After negotiations on the price, both seller and Gordon signed a purchase contract for $62,000, which placed the responsibility to inspect the house on Gordon and required her to notify the seller of any necessary repairs within fourteen days of both parties signing the purchase contract.  Specifically, the contract stated:

 (B) Buyer at Buyers expense shall have the privilege and responsibility of inspecting the structure, square footage, environmental concerns including but not limited to radon gas, wetlands study, appurtenant buildings, heating, air conditioning, electrical and plumbing systems as well as built-in appurtenant equipment or appliances prior to the day of closing or possession.  In the event repairs are necessary to place the heating system, air conditioning, plumbing, electrical system, and any appliances to be conveyed in operative condition and to make the roof free of leaks and the dwelling structurally sound, the Seller shall be notified within 14 days after both parties have signed this Agreement. 

(emphasis added).  Gordon admitted that she both read and understood this provision.  In addition, Gordon acknowledged that the seller did not charge her for a home inspection on the settlement statement.  
Besides placing the responsibility on the buyer to inspect the home for defects, the contract also included a disclaimer provision.

 DISCLAIMER BY BROKERS AND AGENTS: The parties acknowledge that the Listing and Cooperating Broker(s) and their Agent(s): (1) Give no guaranty or warranty of any kind, express or implied, as to the physical condition of the property or as to the condition of or existence of improvement services or systems, thereto, included but not limited to termite damage, roof, basement, appliances, heating and air conditioning systems, plumbing, sewage, electric systems, and to the structure; (2) give no warranty, express or implied, as to the merchantability of fitness for a particular purpose as to the property or such improvements thereto and any implied warranty hereby disclaimed; . . . (4) Give no guaranty or warranty concerning (a) any certification or inspection concerning the condition of the property . . . . 

Despite this disclaimer provision, Gordon claimed from her prior conversations with Tillman, she believed a home inspection would be conducted on her behalf.  While no inspection was arranged explicitly for Gordon, Orkin Pest Control did conduct an inspection to issue the CL-100 termite and moisture report on the house pursuant to the terms of the purchase contract.[1]  Gordon maintains the closing attorney presented her only the first page of the report at the closing and claims her signature on the second page of the termite report is a forgery. 
After moving into the house, Gordon testified to a litany of problems, the majority of which she denied discovering before purchasing the house.  Furthermore, many of these problems, which Gordon included in her damages testimony, were also items she conceded would not be within the scope of a home inspection (i.e. lack of insulation in walls; lack of sub-flooring; cracks in ceilings and walls that developed post-purchase; and replacement of dirty carpet). 
While Gordon attempted to undertake some minor repairs, by January of 2004, she contacted R.T. Teal to remodel the house.  Teal estimated it would cost approximately $60,000 to repair the house, but Teal included no specific itemizations to explain how he arrived at the $60,000 figure. 
Furthermore, Teals estimate encompasses a complete and total renovation of the house.  The estimate includes, inter alia, replacing all plumbing because the pipes were rusty; tearing down an addition and rear deck; installing new concrete footings for foundational support; replacing the stove range hood, kitchen cabinets, and counter tops; upgrading the electrical panel box; and replacing the baseboard heater with a new unit because of its increased efficiency.  Gordon apparently never hired Teal to complete these renovations.  By April of 2004, Gordon permanently vacated her house claiming the heat was not working properly. 
Gordon subsequently filed suit against several parties, including Tillman, but only Tillmans case failed to settle.  Prior to trial, the circuit court heard Tillmans motion for summary judgment and granted Tillmans motion as to all causes of action except Gordons claim for fraud.  Gordon did not appeal the circuit courts grant of summary judgment.  After Gordons presentation of evidence, Tillman moved for a directed verdict on the fraud claim.  The circuit court granted Tillmans motion for directed verdict.  This appeal followed.  
STANDARD OF REVIEW
When ruling on directed verdict or JNOV motions, the circuit court must view the evidence and the inferences that reasonably can be drawn therefrom in the light most favorable to the nonmoving party.  Sabb v. S.C. State Univ., 350 S.C. 416, 427, 567 S.E.2d 231, 236 (2002).  If the evidence as a whole is susceptible to more than one reasonable inference, a jury issue is created, and the motion should be denied.  Adams v. G.J. Creel & Sons, Inc., 320 S.C. 274, 277, 465 S.E.2d 84, 85 (1995); Bailey v. Segars, 346 S.C. 359, 365, 550 S.E.2d 910, 913 (Ct. App. 2001).  However, this rule does not authorize submission of speculative, theoretical, and hypothetical views to the jury.  Hanahan v. Simpson, 326 S.C. 140, 149, 485 S.E.2d 903, 908 (1997).  
In reviewing a grant of a directed verdict, the appellate court should not ignore facts unfavorable to the opposing party.  Collins v. Bisson Moving & Storage, Inc., 332 S.C. 290, 296, 504 S.E.2d 347, 350 (Ct. App. 1998).  In essence, the court must determine whether a verdict for the opposing party would be reasonably possible under the facts as liberally construed in the partys favor.  Harvey v. Strickland, 350 S.C. 303, 309, 566 S.E.2d 529, 532 (2002).  The appellate court will reverse the circuit courts ruling on a directed verdict or JNOV motion only when there is no evidence to support the ruling or when the ruling is controlled by an error of law.  Law v. S.C. Dept of Corr., 368 S.C. 424, 434-35, 629 S.E.2d 642, 648 (2006); McMillan v. Oconee Meml Hosp., Inc., 367 S.C. 559, 564, 626 S.E.2d 884, 886 (2006).  
LAW/ANALYSIS
Initially, we note that the circuit court granted Tillmans motion for a directed verdict based on several independent sustaining grounds, namely: (1) Gordon failed to prove by clear and convincing evidence that Tillman committed fraud; (2) Tillman owed no duty to Gordon; (3) Gordons reliance on Tillmans statements was unreasonable; (4) any damages claimed by Gordon were speculative in nature; (5) a substantial portion of the alleged damages would not have been revealed by a home inspection; and (6) Gordon presented no evidence that Tillman misled Gordon in relation to the CL-100 termite letter signed at closing.  
Because Gordon addressed only the issue of fraud on appeal, we address the remaining alternative sustaining grounds only as they relate to Gordons failure to prove fraud.  See State v. Dunbar, 356 S.C. 138, 142, 587 S.E.2d 691, 694 (2003) (No point will be considered which is not set forth in the statement of issues on appeal.) (citing Rule 208(b)(1)(B), SCACR).  In view of our disposition on the issue of fraud, we need not separately address the remaining alternative sustaining grounds or Gordons argument regarding the trial courts exclusion of rental testimony.  See Futch v. McAllister Towing of Georgetown, Inc., 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) ([An] appellate court need not address remaining issues when disposition of prior issue is dispositive.) (internal citation omitted).   
I.   Directed Verdict on Fraud Cause of Action
Gordon claims the circuit court erred in granting a directed verdict on her cause of action for fraud against Tillman because she presented sufficient evidence to submit her claim to the jury.  We disagree.
Gordon testified that Tillman made several fraudulent representations, which induced her to purchase the house and subsequently incur damages.  First, she testified Tillman told her the house would be inspected prior to closing.  Second, Gordon stated Tillman told her the house was a fine house.  Further, she contends that Tillman never presented her with the full termite inspection report, and his failure to do so constituted a misrepresentation regarding the condition of the house.  
In South Carolina, to establish a claim for fraud, the complaining party must show by clear and convincing evidence: (1) a representation; (2) falsity of representation; (3) materiality of representation; (4) speakers knowledge of its falsity or a reckless disregard for its truth or falsity; (5) intent that the hearer act upon the representation; (6) the hearers ignorance of its falsity; (7) the hearers reliance on its truth; (8) the hearers right to rely thereon; and (9) the hearers consequent and proximate injury.  Schnellman v. Roettger, 368 S.C. 17, 22-23, 627 S.E.2d 742, 745 (Ct. App. 2006).  Furthermore, proof of every element is required to succeed on this claim.  See OShields v. S. Fountain Mobile Homes, Inc., 262 S.C. 276, 281, 204 S.E.2d 50, 52 (1974) (Failure to prove any of the . . . elements [of fraud] is fatal to recovery.) (internal citation omitted).   
a. Tillmans statements regarding the home inspection
Gordon argues Tillmans statement that a home inspection was part of the home purchasing process was a fraudulent misrepresentation on which she detrimentally relied.  We disagree.
First, we recognize that a sellers agent typically owes no fiduciary duty to the buyer in a real estate transaction.  See Harrington v. Mikell, 321 S.C. 518, 522, 469 S.E.2d 627, 629 (Ct. App. 1996) (holding that defendant, as agent of seller, owed no fiduciary duty to buyer when agent disclosed to buyer that he was the listing agent of the seller, and thus defendant was not liable for negligent misrepresentation); see also Lengel v. Tom Jenkins Realty, Inc., 286 S.C. 515, 518, 334 S.E.2d 834, 836 n.1 (Ct. App. 1985) (recognizing a real estate agent employed by a seller to sell his home is ordinarily the sellers agent, and generally, no fiduciary duty exists between sellers agent and buyer);  S.C. Code § 40-57-137(F) (Supp. 2005) (A sellers agent is not obligated to discover latent defects in property or to advise the agents clients on matters outside the scope of the agents real estate expertise.).  
In this case, Tillman was exclusively the sellers agent, which he fully disclosed to Gordon before she signed the purchase contract, both orally and in writing.  As sellers agent, Tillman owed no special duty to Gordon; thus, Gordon had no right to rely on Gordons representations.
Second, a cause of action for fraud will not lie when a person fails to exercise reasonable diligence in protecting that persons own interests.  J.B. Colt Co. v. Britt, 129 S.C. 226, 233, 123 S.E. 845, 848 (1924); see also Watts v. Monarch Builders, Inc., 272 S.C. 517, 519-20, 252 S.E.2d 889, 891 (1979) (in denying buyers claim for fraud against sellers, court held buyers chose to shut their eyes by failing to examine property as closely as they should have and failing to request a metes and bounds description of the property).  
Gordon never requested a home inspection report from Tillman at any time during the negotiation process, even though she claims she would not have closed on the house without a home inspection.  We find it difficult to imagine that if Gordon felt so strongly about a home inspection, she would not have been more adamant about seeing the appropriate documentation before or during closing.  We believe a reasonable home buyer in her position who was fully aware that the broker only represented the seller and was operating under the assumption an inspection was done would have insisted upon a home inspection report pre-closing.  See Harrington, 321 S.C. at 522, 469 S.E.2d at 629 (As part of [a fraud] case, plaintiff must show that the reliance on the misrepresentation was reasonable.).
Third, if a contracting party is in a position to learn the contents of a contract and thus be fully protected by reading it, that party is bound by its terms and cannot later cry fraud.  Britt, 129 S.C. at 233, 123 S.E. at 848.  In Dukes v. Life Ins. Co. of Virginia, 184 S.C. 500, 193 S.E. 36 (1937), the court held the plaintiff had no right to rely on an insurers oral representations when plaintiff read the contract and had ample opportunity to discover the discrepancy between the contract and the insurers misrepresentations.  While recognizing the action was one in tort, not in contract, the court stated: When the parties have reduced their contract to writing, the court can look only to the terms in which the parties have expressed their intention . . . . Dukes, 184 S.C. at 507, 193 S.E. at 39.  The court noted this quotation serves as an additional warning to those who would avoid a written contact on the ground that it does not express the terms of an oral agreement . . . if the failure to discover the difference is due to the negligence of the plaintiff in acquainting himself with the contents of the instrument . . . . Id.  
The purchase contract between the parties, which Gordon read and signed, stated that Gordon was responsible for conducting a home inspection.  Gordon had ample opportunity to read the contract and question Tillman on any discrepancies between their prior conversations and the contract signed by Gordon at closing.  Given the facts and her failure to acquaint herself with the contract, Gordon had no right to rely on any statements by Tillman.   
b. Tillmans statements regarding the quality of the house 
Gordon next argues that Tillman fraudulently misrepresented the condition of the house when he told her the house was a fine house.  We disagree.
In deciding whether a statement is fraudulent, our courts have determined that [n]ot every statement made in the course of a commercial dealing is actionable at law.  Bishop Logging Co. v. John Deed Indus. Equip. Co., 317 S.C. 520, 526, 455 S.E.2d 183, 187 (Ct. App. 1995).  For a representation to be actionable, it must be predicated on misstatements of fact rather than misstatements of opinion . . . [if a matter is] susceptible of exact knowledge when the statement was made, [it] is usually considered to be a matter of fact.  Gilbert v. Mid-South Mach. Co., Inc., 267 S.C. 211, 220-21, 227 S.E.2d 189, 193 (1976); see also Fields v. Melrose Ltd. Pship, 312 S.C. 102, 439 S.E.2d 283 (Ct. App. 1993) (holding statements that membership prices in resort club would reach a certain level were not fraudulent because puffing or sales talk is permitted by law and did not on its face constitute unfair trade practices).  Furthermore, to be fraudulent, the false representation must be predicated upon misstatements of fact rather than upon an expression of opinion, an expression of intention or an expression of confidence that a bargain will be satisfactory.  Bishop Logging Co., 317 S.C. at 527, 455 S.E.2d at 187 (internal citations omitted) (emphasis added). 
Tillmans statement to Gordon that the house was a fine house does not rise to the level of a fraudulent representation because expressions of opinion are permissible in a commercial dealing in South Carolina.  While the house was not a fine house by Gordons standards, Tillmans statement was nothing more than a subjective expression of confidence in the transaction.  Tillmans statement was based neither on pre-existing facts nor was it susceptible of exact knowledge; therefore, it does not rise to the level of fraudulent representation.
c.     CL-100 Termite Inspection Report
Gordons final claim is that Tillman defrauded her when he never presented her with the second page of the CL-100 termite report, which she stated disclosed significant damage.  In addition, Gordon claims the signature on the second page of the termite letter is a forgery.  We disagree.
Here, Gordon has failed to meet her burden to convince this Court that the circuit court erred in its factual findings.  See Blackmon v. United Ins. Co., 235 S.C. 335, 341, 111 S.E.2d 552, 555 (1959) (In holding the record was void of any evidence of bad faith, the court stated fraud is provable by circumstantial evidence, but it is never presumed, and evidence of it must be clear, cogent, and convincing.) (internal citations omitted).  The circuit court held that Gordon presented no evidence that Tillman defrauded her.  Similarly, we find no evidence of record to support Gordons assertion that Tillman actively concealed part of the termite report or was involved in forging her signature.  Because Gordons conclusory assertions are unsupported by the record, we find this argument to be without merit.
CONCLUSION
For the reasons stated herein, the trial courts decision is
AFFIRMED.[2]
HEARN, C.J., KITTREDGE, and WILLIAMS, JJ., concur.

[1] The purchase contract states in pertinent part: Seller shall, at [her] expense, have the property inspected and shall obtain a Wood Infestation Report (CL100) from a licensed and bonded pest control operator . . . . 
[2] We decide this case without oral argument pursuant to Rule 215, SCACR.